HAROLD I. YAMANE, TAX COLLECTOR, FIRST TAXATION DIVISION, STATE OF HAWAII v. JOHN A. PIPER.

No. 4854.

November 5, 1969.

RICHARDSON, C.J., MARUMOTO, ABE, LEVINSON, JJ., AND CIRCUIT JUDGE LAURETA IN PLACE OF KOBAYASHI, J., DISQUALIFIED.

OPINION OF THE COURT BY MARUMOTO, J.

This is an appeal by plaintiff tax collector from a circuit court judgment entered on December 13, 1968, in favor of defendant in an action to collect state income tax on income earned by defendant on Wake Island in 1962.

HRS c. 235 imposes income tax on residents of Hawaii. A resident is defined in § 235-1 as "(1) every individual

domiciled in the State, and (2) every other individual whether domiciled in the State or not, who resides in the State."

Defendant was not physically present in Hawaii in 1962. So, in that year, he would have been a resident under § 235-1 only if he was "domiciled" in Hawaii.

"Domicile is proved by evidence of two facts: physical presence at a particular place and intention of the party to reside there permanently; or as is sometimes said, to make the place his home with no present intent to leave at any foreseeable future time." *Blackburn* v. *Blackburn*, 41 Haw. 37, 40 (1955).

"In order to acquire new domicile there must be residence or bodily presence in the new location and an intention to remain; act and intent must concur; in addition there must be an intention to abandon the old domicile." *Powell* v. *Powell*, 40 Haw. 625, 629 (1954).

Defendant was physically present on Wake Island between March 1959, when he went there to fill a position with Federal Aviation Agency, and March 1964, when he obtained a transfer to the agency office in Honolulu. Before going to Wake Island, he was domiciled in Hawaii, filling various positions with the Federal Aviation Agency here. He sought and obtained a transfer back to Hawaii in 1964 because he was unable to meet the physical requirements for work on Wake Island and the only position with the agency available at that time for a person in his physical condition was in Honolulu, none being available on the mainland.

Defendant says that at the time he left Hawaii for Wake Island, he did so with the intention of abandoning his residence in Hawaii, residing indefinitely on Wake Island, and seeking a position somewhere on the mainland should his tour of duty there come to an end.

There is no question that defendant abandoned his resi-

dence in Hawaii at the time he went to Wake Island. He moved to Wake Island with his wife and all of his children. He left no real or personal property, and no bank account, in Hawaii. He sold his automobile, his television set, and household furnishings. The pulling up of stakes was complete. During the period of his residence on Wake Island, he did not maintain any club memberships in Hawaii and did not vote in Hawaii political elections.

However, plaintiff contends that defendant's loss of his Hawaiian domicile was not complete because, aside from his self-serving statement, there has been no showing of his intention to live on Wake Island permanently or for an indefinite period.

When defendant went to Wake Island, he did so upon signing a two-year employment contract with Federal Aviation Agency. Plaintiff urges this fact upon this court as proof that defendant intended to live only temporarily on Wake Island.

We cannot conclude as a matter of law that a person who moves to Wake Island pursuant to a two-year employment contract does not intend to live there permanently or indefinitely. It is entirely possible that such person envisions a succession of contracts spinning into an indefinite future.

Here, as a matter of fact, defendant had obtained a second two-year contract after the expiration of the original contract. The only reason that he did not obtain a third contract was that he was unable to meet the physical requirements for continued employment on Wake Island.

Plaintiff refers to a ruling which defendant sought and obtained from the personnel officer of Federal Aviation Agency in June 1961 as another evidence that he had no intention of living on Wake Island permanently or indefinitely. The ruling, as sought and obtained, stated: "Chicago, Illinois, is hereby considered to be your actual

place of residence *for purposes of exercising rights under Public Law 737."* (Emphasis supplied)

Public Law 737 relates to travel benefits of federal employees working overseas. Plaintiff has conceded that defendant sought the ruling in order to be entitled to travel to Chicago to visit friends and relatives at government expense. Defendant was born in Norwood, Illinois, and had friends in Chicago. In view of the special purpose for which the ruling was sought, we do not think that defendant's action in seeking the ruling was sufficient to overcome evidence which showed that in 1962 he had no intention to leave Wake Island at any foreseeable future time.

Affirmed.

*Roy M. Kodani,* Deputy Attorney General (*Bertram T. Kanbara,* Attorney General, with him on the briefs), for plaintiff-appellant.

*Arthur B. Reinwald* (*Howard K. Hoddick* with him on the brief, *Anthony & Waddoups* of counsel) for defendant-appellee.

SHIRLET P. APANA *v.* RICHARD M. BOTTS
*v.* DORNA NAKAMURA.

No. 4684.

DORNA NAKAMURA *v.* RICHARD M. BOTTS.

No. 4685.

NOVEMBER 6, 1969.

RICHARDSON, C.J., MARUMOTO, ABE,
LEVINSON AND KOBAYASHI, JJ.

*Per Curiam.* The trial court's decision is free of reversible error, and is hereby affirmed. Only one issue raised merits discussion.

Defendant-appellant argues that the trial court committed error in striking a doctor's testimony relevant to the issue of damages. *Dzurik* v. *Tamura,* 44 Haw. 327, 330, 359 P.2d 164-165 (1960).

Defendant asked questions of an expert witness.[1] Plain-

---

[1] Two separate portions of testimony were involved :

(1)

Q: And, Doctor, based on your examination, and based on the history that you took to the extent that you felt it was necessary in your examination, did you arrive at any conclusions relative to her complaints in this regard?
A: Yes I did.
Q: And what were those?
A: As is my custom, in attempting to analyze a problem of pain, particularly when the pain is subjective and without any objective accompaniment that I can determine, I explored by interview with the patient the extent of her pain, and the effect it might have upon

*Willson C. Moore, Jr.* (*Felix A. Maciszewski* on the brief, *Henshaw, Conroy & Hamilton* of counsel), for defendant-appellant.

*Patrick F. Tuohy* (*Richard D. Welsh* with him on the brief) for plaintiff-appellee.

*Herbert K. Shimabukuro* (*Ronald D. Libkuman* with him on the brief) for third-party defendant-appellee.