SHARON ANN WHITEHEAD, Plaintiff-Appellee, *v.* JOHN
JAY WHITEHEAD, Defendant, and STATE OF HAWAII,
Defendant Intervenor-Appellant

No. 4996

January 19, 1972

RICHARDSON, C.J., MARUMOTO, ABE,
LEVINSON, JJ., AND CIRCUIT JUDGE
LUM IN PLACE OF KOBAYASHI, J.,
DISQUALIFIED

OPINION OF THE COURT BY MARUMOTO, J.

In this opinion, Sharon Ann Whitehead, plaintiff-appellee, will be referred to as plaintiff; John Jay Whitehead defendant, as defendant; and the State of Hawaii, intervenor-appellant, as the State.

On October 21, 1969, plaintiff filed a complaint for divorce against defendant in the family court of the third circuit on the ground of grievous mental suffering inflicted upon her for more than 60 days. Defendant was served by registered mail at Bluebell, Utah, but did not answer.

By stipulation, the State was allowed to intervene. It filed an answer alleging that the court had no jurisdiction because plaintiff did not aver that she had resided in Hawaii for a continuous period of one year before the filing of her complaint. The averment of jurisdiction in the complaint was that plaintiff had been domiciled or had been physically present in the circuit for a continuous period of at least three months before its filing.

At the hearing in the family court, plaintiff testified that she came to Hilo on July 20, 1969, with the intention of remaining in Hawaii indefinitely. Previously, she had resided in Utah. She also established to the satisfaction of the court her allegation of grievous mental suffering.

The court denied the State's claim of lack of jurisdiction, and entered a decree of divorce as prayed for by plaintiff.

The State has appealed from that denial. The sole question for decision on the appeal is the validity of the dura-

tional requirement of domicile or physical presence for one year in the State contained in HRS § 580-1.

HRS § 580-1, in its entirety, reads as follows:

"§ 580-1. Jurisdiction; hearing. Exclusive original jurisdiction in matters of annulment, divorce and separation, subject to section 603-37 as to change of venue, and subject also to appeal according to law, is conferred upon the judge or judges of the family court of the circuit in which the applicant has been domiciled or has been physically present for a continuous period of at least three months next preceding the application therefor. No absolute divorce from the bond of matrimony shall be granted for any cause unless either party to the marriage has been domiciled or has been physically present in the State for a continuous period of at least one year next preceding the application therefor. A person who may be residing on any military or federal base, installation, or reservation within the State or who may be present in the State under military orders shall not thereby be prohibited from meeting the requirements of this section."

The court denied the State's claim upon a holding that the second sentence of § 580-1 violates the equal protection clause of the fourteenth amendment of the United States Constitution.

The holding is based on the following reasoning: the durational requirement in the second sentence of § 580-1 operates to create two classes of divorce applicants; one class consists of applicants who have been domiciled or have been physically present in the State for one year or more; the other class consists of applicants who have been domiciled or have been physically present in the State for less than one year; applicants in the former class are eligible for divorce; applicants in the latter class are not; such classification has no reasonable relation to any legitimate governmental objective; the classification, consequently, invidiously discriminates against divorce applicants in the latter class in violation of the equal protection clause.

It will be noticed that the first sentence of § 580-1 contains a durational requirement involving domicile or physical presence in a circuit. That provision is concerned with venue. The validity of the durational requirement therein is not in issue in this case.

The second sentence of § 580-1 is derived from § 55 of the Organic Act, which provided: "No divorce shall be granted by the legislature, nor shall any divorce be granted by the courts of the Territory unless the applicant therefor shall have resided in the Territory for two years next preceding the application, but this provision shall not affect any action pending when this Act takes effect." Act of April 30, 1900, 31 Stat. 141, c. 339, § 55.

Before the enactment of the Organic Act, there was no such requirement in the Hawaiian law. The applicable statute merely designated the courts which were empowered to grant divorce and provided the grounds for divorce. L. 1870, c. 16, § 2.

The prescribed period of two years in the Organic Act was reduced to one year by the State legislature after Hawaii became a state by S.L.H. 1967, c. 76, § 2.

Hawaii is not alone in denying divorce to an applicant who has not been domiciled or has not been physically present in the state for a prescribed period before bringing the divorce action.

In the discussion below, the requirement of domicile or physical presence in the state for a prescribed period in state divorce statutes will be referred to as residential requirement for divorce.

In 1944, forty-one of the forty-eight states had residential requirement for divorce in which the prescribed period was one year or more. Handbook of National Conference of Commissioners on Uniform State Laws and Proceedings of the Fifty-Fourth Conference (1944), p. 267. In subsequent years the trend has been to reduce the prescribed period, but a majority of the states still require residence of at least one year.

Until recently, the validity of residential requirement for divorce was taken practically for granted. There were a few challenges, but they were consistently, and almost perfunctorily, rejected. *Pugh v. Pugh*, 25 S.D. 7, 124 N.W. 959 (1910); *Worthington v. District Court*, 37 Nev. 212, 142 Pac. 230 (1914); *Hensley v. Hensley*, 286 Ky. 378, 151 S.W.2d 69 (1941).

It is evident that plaintiff filed her complaint in this case in the light of the decision in *Shapiro v. Thompson*, 394 U.S. 618 (1969).

*Shapiro* held that the statutes of Connecticut, Pennsylvania, and the District of Columbia which granted welfare assistance to persons who have resided in the jurisdiction for one year or more, but denied such assistance to persons who have not resided for at least one year, were in violation of the equal protection clause.

In so holding, the court stated that such statutes effected a classification which impinged upon the right of individuals to travel interstate; that the right to travel interstate is a fundamental right; that where a state statute touches upon a fundamental right, "its constitutionality must be judged by the stricter standard of whether it promotes a compelling state interest", rather than under the traditional standard which holds that equal protection is denied only if the classification is without any reasonable basis.

Basing her position on such statements, plaintiff contended in the family court that the second sentence of § 580-1 interfered with her right to interstate movement without promoting any compelling state interest, and, for that reason, violated the equal protection clause.

The family court found no necessity for resorting to *Shapiro*. It stated: "Even applying the traditional standard, and not the stricter *Shapiro* standard, the waiting period requirement clearly violates the equal protection clause."

The court reached that result by treating the residential requirement in the second sentence of § 580-1 as posing an issue of discrimination in the right of access to courts,

rather than an issue of interference with the right of interstate travel.[1] The decision contains no discussion of the latter right.

Inasmuch as the family court based its holding on the traditional standard, we will first consider the validity of residential requirement for divorce under that standard.

Under the traditional standard, a statute does not deny equal protection "if any state of facts reasonably may be conceived to justify it." *McGowan v. Maryland*, 366 U.S. 420, 426 (1961); *Dandridge v. Williams*, 397 U.S. 471, 485 (1970).[2]

It is stated in *Dutcher v. Dutcher*, 39 Wis. 651, 657 (1876), with regard to an early Wisconsin statute imposing a one-year residential requirement for divorce: "The policy of the statute in requiring a year's residence is obviously to secure good faith in the residence of parties coming from without the state and applying for divorce here."

A similar statement is made in Ernest Rabel, The Conflict of Laws—A Comparative Study 393 (1945). The statement there is: "The minimum requirement of 'residence' is generally understood to evince the required mental purpose, which, to put it simply, is that of establishing a real and permanent domicil."

We think that the statements quoted above give the real basis for the prevalence of the requirement in state divorce laws.

In the United States, divorce is a matter within the con-

---

[1]The family court stated: "The question in this case is whether under the United States Constitution the State can deny access to the courts to a resident of less than one year, who believes that she has adequate grounds for divorce, until she acquires a total residence period of one year by waiting, and further residing continuously in the State of Hawaii, when the resident who has resided for over one year is not so denied, and may go to the courts for relief, without further waiting, upon belief that there is sufficient grounds for divorce."

[2]In Dandridge v. Williams, Mr. Justice Marshall stated in dissent that the court's holding in that case meant that "regardless of the arbitrariness of a classification it must be sustained if any state goal can be imagined that is arguably furthered by its effects."

trol of the states, subject to applicable federal constitutional limitations. But, for a state to exercise its control, it must have jurisdiction over the matter. It has jurisdiction when one of the parties to the action is domiciled therein. Restatement, Second, Conflict of Laws § 71 (1971).

A person establishes his domicile in a state by being physically present there with the intention of remaining indefinitely. For that purpose, no particular length of stay is necessary. Even a day will suffice. *Anderson v. Anderson*, 38 Haw. 261 (1948).

Thus, it may be argued that a requirement of an extended period of residence is improper as a means of assuring the existence of domicile.

However, we think that the states are justified in requiring an objective test of the establishment of domicile, such as is provided in residential requirement for divorce, because of the possibility of perjury if the finding on that issue is made dependent upon the testimony of an interested party. *Wheat v. Wheat*, 299 Ark. 842, 318 S.W.2d 793 (1958); Rabel, *supra*, p. 394; Ernest G. Lorenzen, Extraterritorial Divorce—Williams v. North Carolina II, 54 Yale L.J. 799, 801 (1945).[3]

It may be stated that, in *Shapiro*, one justification advanced for the residential requirement in controversy was that it provided an objective test of residency, but the court rejected the justification. However, in that case, the justification was offered in connection with the question as to whether there was any compelling state interest to warrant the requirement, not to show the existence of any state of

---

[3]It is stated in Lorenzen, supra: "It has been estimated that 8,616 divorces were granted in Nevada in 1942 and 11,399 in 1943, the great majority of which must have been obtained by nonresidents who went to Nevada solely for divorce purposes, remaining there only the required six weeks. All the while they contemplated returning to their home states immediately after their divorces were secured, yet they all swore falsely that they intended to make Nevada their permanent home, having been warned by local counsel that, unless they did so, they would be out of court. On advice of counsel they also took steps which would be accepted by the Nevada courts as corroborating their sworn statement but were actually nothing more than sham and camouflage."

facts which reasonably might be conceived to justify the requirement under the traditional standard.

We hold that the residential requirement for divorce in the second sentence of § 580-1 is not in violation of the equal protection clause under the traditional standard.

This brings us to a consideration of the validity of residential requirement for divorce under the stricter standard mentioned in *Shapiro*. The stricter standard applies to a situation involving a violation of fundamental right. The fundamental right claimed to be violated here is the right of individuals to travel interstate.

The right of interstate travel was held to be constitutionally protected under decisions rendered before *Shapiro*. *Crandall v. Nevada*, 73 U.S. 35 (1867); *Edwards v. California*, 314 U.S. 160 (1941); *United States v. Guest*, 383 U.S. 745 (1966). But the protection accorded to that right under pre-*Shapiro* decisions was against direct impingement thereon, not against impingement which was indirect and incidental.

In *Williams v. Fears*, 179 U.S. 270 (1900), it was held that a Georgia statute imposing an occupation tax upon persons hiring laborers to work beyond state limits did not violate the right. The court stated: "If it can be said to affect the freedom of egress from the State, * * * it is only incidentally and remotely." (179 U.S. 274).

The welfare statutes considered in *Shapiro* contained two residential requirements. One required that applicants for welfare assistance be residents of the jurisdiction from which benefits were sought. The other required that applicants be residents of the jurisdiction for at least one year before applying for welfare assistance. The validity of the first requirement was not an issue in the case. Only the durational residential requirement was in issue.

Durational residential requirements do not interfere directly with the right of interstate travel. Their impact upon the right, if any, is indirect, in that they may operate to deter some individuals from exercising the right.

*Shapiro* extended the protection accorded to the right of interstate travel to a situation involving indirect impingement resulting from the deterrent effect of durational residential requirement in welfare statutes. But the court stated: "We imply no view of the validity of waiting-period *or* residence requirements determining eligibility to vote, eligibility for tuition-free education, to obtain a license to practice a profession, to hunt or fish, and so forth. Such requirements may promote compelling state interests on the one hand, or, on the other, may not be penalties upon the exercise of the constitutional right of interstate travel." (394 U.S. 638, footnote 21).

So, *Shapiro* does not outlaw all durational residential requirements Some may be valid. The difficulty which confronts us is that *Shapiro* did not provide any criteria for determining the requirements which are valid and those which are not.

In the circumstance, we approach the problem at hand by examining the factors in the durational residential requirement in the welfare statutes considered in *Shapiro* which induced the court to declare the requirement invalid, and comparing them with the factors in residential requirement for divorce to see whether there are essential differences which render the latter valid.

The court stated in *Shapiro*:

"There is weighty evidence that exclusion from the jurisdiction of the poor who need or may need relief was the specific objective of these provisions. * * *

"We do not doubt that the one-year waiting period device is well suited to discourage the influx of poor families in need of assistance. An indigent who desires to migrate, resettle, find a new job, and start a new life will doubtless hesitate if he knows that he must risk making the move without the possibility of falling back on state welfare assistance during his first year of residence, when his need may be most acute. But the purpose of inhibiting migration by needy persons into the

state is constitutionally impermissible." (394 U.S. 628-629).

It appears from the foregoing statement that the following factors were controlling in *Shapiro*: first, the durational residential requirement was specifically designed to exclude from the jurisdiction imposing the requirement indigents who needed or might have need for welfare assistance. Second, the relief which the requirement was designed to withhold from the indigents involved their need for basic necessities of life which were immediate and could not be postponed. Third, the efficacy of the requirement accomplishing its objective was great. The accomplishment of the objective was more than a possibility; it was a probability, if not a near certainty. This was so because the requirement affected the indigents' immediate livelihood.

In *Shapiro*, the factors mentioned above combined to impinge upon the exercise of the right of indigents to travel interstate substantially and in a real sense.

In the case of residential requirement for divorce, we may safely say that exclusion from a jurisdiction of persons contemplating divorce was not its specific purpose. The states enacted such requirement in an era when travel was difficult and society was considerably less mobile than today. *Worthington v. District Court, supra.*[4] The requirement is concerned with the establishment of domicile, as stated earlier in this opinion.

Also, the relief delayed by the requirement does not have the urgency which is present in the case of indigents' need for necessities of life. Divorce can wait. It is theoretically conceivable that a person may abandon his plan to estab-

---

[4]In Worthington v. District Court, the court stated: "[O]ur law in its present form * * * was passed at the first session of the territorial legislature for the people here before there was any railroad in this state or modern means of transportation, when the laws of some other states did not require as long a residence, and when there was no anticipation that people would come to this state for the purpose of obtaining divorces." (37 Nev. 226, 142 Pac. 235).

lish a home in another state because he cannot get immediate divorce there. However, because divorce usually does not have immediacy and can wait, we do not think that the requirement operates in any appreciable number of cases to deter persons from moving into other states to establish their homes.

In our opinion, the probability of residential requirement for divorce operating to deter the exercise of the right of interstate travel is too remote to render it invalid. In this respect, the requirement is like the provision in the Georgia statute which was declared valid in *Williams v. Fears, supra,* on the ground that it affected the right of interstate travel only incidentally and remotely.

We thus hold that, under the stricter standard also, the residential requirement for divorce in the second sentence of § 580-1 does not violate the equal protection clause.

We have thus far discussed the contentions advanced by plaintiff at the hearing in the family court and at the oral argument in this court. Subsequent to the oral argument here, the Supreme Court of the United States decided *Boddie v. Connecticut,* 401 U.S. 371 (1971). In a supplemental brief, which we permitted plaintiff to file, she urges *Boddie* is apposite.

*Boddie* was an appeal from a decision of a three-judge federal district court in Connecticut, reported in 286 F. Supp. 968 (1968). The plaintiffs in the case were welfare recipients who were barred from having their divorce actions heard by the Connecticut state courts having jurisdiction over divorce because of the refusal of the court officers to accept their complaints for filing without the prepayment of court costs.

At the time of the entry of the district court decision, section 46-15 of the Connecticut statutes required the plaintiffs in divorce actions to have continuous residence of three

years in the state, except in certain specified circumstanes.[5] The validity of that residential requirement was not an issue in the case.

The Supreme Court held that the denial of access to courts for divorce to indigents by reason of inability to pay court costs violated the due process clause of the fourteenth amendment.

In so holding, the court stated that the states have seen fit to oversee many aspects of the marriage institution because "marriage involves interests of basic importance in our society"; that without prior judicial imprimatur, individuals may freely enter into and rescind commercial contracts, but they may not covenant for or dissolve marriages without state approval; that even where all substantive requirements are concededly met, two consenting adults may not divorce and mutually liberate themselves from the legal obligations that go with marriage, and more fundamentally the prohibition against remarriage, without invoking the state's judicial machinery; that "due process requires, at a minimum, that absent a countervailing state interest of overriding significance, persons forced to settle their claims of right and duty through the judicial process must be given a meaningful opportunity to be heard"; and that "given the basic position of the marriage relationship in this society's hierarchy of values and the concomitant state monopolization of the means for legally dissolving that relationship, due process does prohibit a State from denying, solely because of inability to pay, access to its courts to in-

[5]Boddie was commenced in the United States District Court of Connecticut on March 13, 1968. At that time, Connecticut General Statutes, § 46-15, read: "If the plaintiff has not continuously resided in this state three years next before the date of the complaint, it shall be dismissed unless the cause of divorce has arisen subsequently to the removal into this state, or unless the defendant has continuously resided in this state three years next before the date of the complaint and actual service has been made upon him, or unless the plaintiff was domiciled in this state at the time of the marriage and before instituting the complaint returned to this state with the intention of permanently remaining. * * * * " In 1969, the residence requirement was reduced to one year by Public Act 18.

dividuals who seek judicial dissolution of their marriages."
(401 U.S. 374, 376, 377.)

The reasoning of the court may be paraphrased as
follows: marriage involves interests of basic importance in
our society; consequently, the states oversee many aspects of
the institution of marriage; one aspect is divorce, or the dis-
solution of marriage relationship; in connection with divorce,
each state has established certain substantive requirements
and requires that proof of satisfaction of the substantive re-
quirements be made in court in a judicial proceeding; in
such a situation, where relief is obtainable only through
judicial proceeding, an indigent may not be denied, solely
because he is poor and cannot pay court costs, an oppor-
tunity to get into court to prove that he has met the requi-
site substantive requirements, without violating the due
process clause.

Thus, *Boddie* did not touch upon the constitutionality of
state action with respect to substantive requirements for
divorce. It is concerned only with a denial of the right of ac-
cess to court to an applicant for divorce solely because of
his indigency. This is emphasized by the court in the con-
cluding paragraph of its opinion as follows: "In concluding
that the Due Process Clause of the Fourteenth Amendment
requires that these appellants be afforded an opportunity to
go into court to obtain a divorce, we wish to re-emphasize
that we go no further than necessary to dispose of the case
before us, a case where the *bona fides* of both appellants'
indigency and desire for divorce are here beyond dispute.
* * * The requirement that these appellants resort to the
judicial process is entirely a state-created matter. Thus we
hold only that a State may not, consistent with the obliga-
tions imposed on it by the Due Process Clause of the Four-
teenth Amendment, pre-empt the right to dissolve this legal
relationship without affording all citizens access to the
means it has prescribed for doing so." (401 U.S. 382).

The residential requirement for divorce in the second
sentence of § 580-1 does not deny access to courts to appli-

cants for divorce. Under our statutes, access to courts for divorce is governed by the first sentence of § 580-1, the validity of which is not in issue in this case although it contains a durational residential requirement. Plaintiff complied with the requirement in the first sentence. So, she got into court, and the court heard her case.

The second sentence of § 580-1 provides that "no divorce * * * shall be granted" unless either party to the marriage has satisfied the durational residential requirement stated therein. It does not say that the court shall not' hear a divorce case in which the requirement has not been met.

The plain meaning of the language of the second sentence of § 580-1 is that satisfaction of the residential requirement is a condition to the granting of divorce by the court which has heard the case, not a condition which deprives a divorce applicant of a forum in which his case may be heard.

This court has held that the residential requirement for divorce in our statutes is jurisdictional. *Zumwalt v. Zumwalt*, 23 Haw. 376 (1916); *West v. West*, 35 Haw. 461 (1940); *Anderson v. Anderson, supra.* The word "jurisdictional", as used in that connection, does not have reference to the jurisdiction of a court to hear and act on a case; rather, it refers to the jurisdiction which every state must have over the marriage relationship as a prerequisite to exercising its control over divorce. This is evident from the statement in *Zumwalt v. Zumwalt, supra*, 380, that "the circuit judge was without authority to grant the decree in the absence of proof of domicil for the necessary length of time." The statement is not that the circuit judge was without authority to hear the case in the absence of the required proof of domicile.

The second sentence of § 580-1 is a provision which sets forth a substantive requirement for divorce. In this respect, it is similar to § 580-41, which sets forth grounds for divorce. An applicant for divorce who fails to prove a

ground for divorce will not be granted a divorce because of failure to satisfy a substantive requirement for divorce. Similarly, an applicant who fails to prove that he has been domiciled or has been physically present in this State for one year will not be able to obtain a divorce because of failure to satisfy a substantive requirement, not because he is denied access to court.

Thus, we do not think that *Boddie* is relevant to the determination of the validity of the residential requirement for divorce in the second sentence of § 580-1.[6]

In concluding this opinion, we recognize that in recent years our society has become much more permissive about divorce than in the past. This is reflected in the successive drafts of the uniform divorce act recommended for enactment by state legislatures by the National Conference of Commissioners on Uniform State Laws.

The early drafts based the granting of divorce on the traditional concept of fault of one of the parties to the marriage. With respect to residential requirement for divorce, the prescribed period was two years in the earliest draft. In subsequent drafts, the period was reduced to one year, then to six months.

The latest draft provides for the entry of divorce decree if: "(1) the court finds that one of the parties has been a resident of this State, or is a member of the armed services who has been stationed in this State, for 90 days next preceding the commencement of the proceeding or the entry of the decree", and "(2) the court finds that the marriage is irretrievably broken."

---

[6] In Wymelenberg v. Syman, 328 F. Supp. 1353 (E.D. Wis. 1971), a three-judge federal district court in Wisconsin declared the two-year residential requirement for divorce in § 247.05(3) of the Wisconsin statutes to be invalid under Shapiro and Boddie, "whether judged by the equal protection clause 'compelling interest' test or by the due process clause 'overriding significance' test." As is stated in our opinion, we take a different view of the applicability of Shapiro and Boddie. However, it may be stated that the wording of the Wisconsin statute is such that it is possible to construe the two-year residential requirement therein as limiting the jurisdiction of the court and not as referring to the jurisdiction of the state over divorce.

Thus, the draft projects a no-fault concept of divorce. However, for the purpose of this case, the significance of the draft lies in the retention of residential requirement for divorce . as a substantive requirement, although the prescribed period has been reduced to ninety days preceding the commencement of the proceeding or the entry of the decree.

The conference approved the draft in August 1970, more than one year after *Shapiro*. The draft was prepared by two law professors, as reporters. Acting for the conference in connection with the preparation of the draft was a committee of thirteen members—two judges, four law professors, and seven practicing attorneys. The eminent reporters and committee members obviously deemed that residential requirement for divorce was valid, despite *Shapiro*.

We do not think that the length of the prescribed period of residence, whether it be one year or ninety days, is material to the validity of residential requirement for divorce. If a prescribed period of one year discriminates against recent residents, so does a prescribed period of ninety days. We think that if the validity of residential requirement for divorce is conceded, the determination of the length of the prescribed period is a matter entirely within legislative discretion.[7]

Reversed.

---

[7] We agree with the following statement in Worthington v. District Court, supra:

"If, as petitioner contends, under the provisions of the United States Constitution and the fourteenth amendment guaranteeing to the citizens of the various states equal protection of the laws, our statutes cannot discriminate against nonresidents desiring divorce, and our Legislature cannot require persons coming to this state and seeking divorce to reside here one year, they cannot be required to reside here six months, nor for any length of time, but would be entitled to maintain an action for divorce for the causes specified under our laws, without taking up their residence here.

"If, contrary to the doctrine universally recognized in other states and in foreign civilized countries, citizens of other states, without obtaining a domicile here, were entitled to apply for divorce in our courts under the provisions of the federal Constitution granting citizens of other states equal protection of the laws, the same condition would exist in all the other states, for the federal

*Morton King,* Deputy Attorney General (*Bertram T. Kanbara,* Attorney General, with him on the brief) for defendant intervenor-appellant.

*Robert Gilbert Johnston,* Chief, Civil Division, and *Andrew Levin,* Associate Counsel, Legal Aid Society of Hawaii, for plaintiff-appellee.

DISSENTING OPINION OF LEVINSON, J.

I dissent.

I believe that HRS § 580-1,[1] which establishes a one-year residence requirement as a jurisdictional prerequisite to the granting of an absolute divorce, is unconstitutional under both the Federal and State Constitutions for the following two reasons: (1) The statute deprives persons, residents in Hawaii for less than one year, of due process of law by denying them access to the only forum capable of granting them a hearing and relief on their claimed right to a dissolution of their marriages. (2) The one-year residence requirement bears no reasonable relation to a legitimate government purpose and thus works an invidious discrimination in violation of the constitutional guarantee of the

Constitution applies equally to all, and every citizen of the United States would be free to go into any adjoining or other state where a divorce might be most easily obtained and start an action, without having any residence or domicile in that state. If residence may be required, necessarily the Legislature must have the power to determine the period." (37 Nev. 240, 142 Pac. 240).

[1]HRS § 580-1 provides:

Exclusive original jurisdiction in matters of annulment, divorce, and separation, subject to section 603-37 as to change of venue, and subject also to appeal according to law, is conferred upon the judge or judges of the family court of the circuit in which the applicant has been domiciled or has been physically present for a continuous period of at least three months next preceding the application therefor. No absolute divorce from the bond of matrimony shall be granted for any cause unless either party to the marriage has been domiciled or has been physically present in the State for a continuous period of at least one year next preceding the application therefor. A person who may be residing on any military or federal base, installation, or reservation within the State or who may be present in the State under military orders shall not thereby be prohibited from meeting the requirements of this section.

equal protection of the laws.[2] Therefore I would hold that the family court properly took jurisdiction of this case and that the decree of divorce should be affirmed.

I. HRS § 580-1 DENIES THE APPELLEE DUE PROCESS OF LAW.

A. *The Appellee's Right to a Judicial Hearing on Her Marital Grievances.*

The legislation at issue in this case touches upon the institution of marriage, one of the most fundamental of human relationships. *Loving v. Virginia,* 388 U.S. 1, 12 (1967); *Skinner v. Oklahoma,* 316 U.S. 535, 541 (1942). Few decisions are as important, or as personal to an individual as those which involve a change in marital status. Yet, as our society is presently organized, such basic decisions are totally dependent upon the sanction of the State for their legal significance; without the law's imprimatur individuals may not validly covenant for or dissolve marriages. Because the State has chosen to monopolize the procedures for legally affecting this vital personal right, I believe that due process of law prohibits, in the absence of a countervailing state interest of overriding significance, restrictions on access to these procedures. This conclusion is supported by a recent United States Supreme Court decision, *Boddie v. Connecticut,* 401 U.S. 371 (1971).

The *Boddie* case, which the majority opinion says is irrelevant,[3] involved issues directly analogous to those pres-

---

[2] The due process and equal protection guarantees are found in article I, section 4 of the Hawaii Constitution and section 1 of the fourteenth amendment to the United States Constitution.

[3] The majority attempts to distinguish the *Boddie* case on the basis that *Boddie* merely involved the question of denial of the right of access to court of an applicant for divorce solely because of his indigency. The majority argues that *Boddie* "did not touch upon the constitutionality of state action with respect to the substantive requirements for divorce," and that the residency requirement for divorce in the second sentence of HRS § 580-1, being essentially substantive, does not deny access to applicants for divorce. Vapid distinctions, however, cannot obscure the fact that the second sentence of HRS § 580-1 limits the subject matter jurisdiction of the family court to those divorce proceedings in which one of the parties has been domiciled or physically

ently before this court. In that case, a Connecticut statute required the payment of certain fees as a condition for bringing an action for divorce. The appellants were welfare recipients who, unable to pay their fees, were precluded from bringing their divorce actions in Connecticut courts. Because of the judicial monopoly over the means of divorce, this denial, the Supreme Court noted, raised important issues of due process. *Boddie v. Connecticut, supra* at 376-77:

> Resort to the judicial process by these plaintiffs is no more voluntary in a realistic sense than that of the defendant called upon to defend his interests in court. For both groups this process is not only the paramount dispute-settlement technique, but, in fact, the only available one. In this posture we think that this appeal is properly to be resolved in light of the principles enunciated in our due process decisions that delimit rights of defendants compelled to litigate their differences in the judicial forum.

Due process mandated that unless a "countervailing State interest of overriding significance" was established, the State could not deny indigents the right to be heard upon their claim for a dissolution of their marriages. *Boddie v. Connecticut, supra* at 377. The Court went on to examine the justifications advanced in support of Connecticut's fee requirement and concluded that they were insufficient to override the appellants' interest in having access to the only avenue open for dissolving their allegedly untenable marriages; therefore due process of law required that they be given a hearing on their divorce claims. *Boddie v. Connecticut, supra* at 383.

I believe that the above principles are dispositive of the issue presently before this court. As in *Boddie*, the appellee

present in Hawaii for a continuous period of at least one year. Thus, the majority likewise fails in its attempt to distinguish Wymelenberg v. Syman, 328 F. Supp. 1353 (E.D. Wis. 1971), on the ground that the Wisconsin statute can be construed as limiting the jurisdiction of the court.

seeks access to the judicial process in order to free herself from the embrace of a dead marriage. Her freedom to remarry and establish a new home and family, both fundamental personal liberties, is entirely dependent upon her ability to gain a court hearing on her claim for divorce. HRS § 580-1 denies the appellee such a hearing and thus curtails her ability to pursue these essential human rights. It is immaterial that this imposition is predicated on insufficiency of residence rather than funds. What is important is that (1) the litigation at issue affects the appellee's fundamental rights to marry and raise a family and (2) access to the judicial process is the only alternative for securing those rights. Once these elements are shown, an issue of due process of law arises and a denial of a judicial hearing may be justified only by a countervailing state interest of overriding significance. *Boddie v. Connecticut, supra* at 377.

Finally, it is worth noting that a three judge United States district court in Wisconsin has applied the due process principles of the *Boddie* case to strike down a Wisconsin two-year residency requirement which restricted access to the State divorce courts. *Wymelenberg v. Syman,* 328 F. Supp. 1353 (E.D. Wis. 1971). The *Wymelenberg* decision, *supra,* also held that the Wisconsin statute must fail as an impermissible attempt to deter the exercise of an individual's constitutional right to travel interstate. Judge Reynolds, writing for the court concluded, *Wymelenberg v. Syman, supra* at 1356:

> [W]hether judged by the Equal Protection Clause "compelling interest" test or by the Due Process Clause "overriding significance" test . . . [the] two-year waiting period requirement constitutes an unconstitutional impingement upon the Fourteenth Amendment of the United States Constitution.

In the instant case, I believe that Hawaii has failed to demonstrate a constitutionally sufficient interest to justify the one-year residency restriction imposed by HRS § 580-1.

B. *The Lack of an Overriding State Interest in a One-Year Residency Requirement.*

The argument for the one-year residency requirement, put forth by the appellant, although it is not discussed in the majority opinion, is that the State's interest in the welfare of the children, affected by the divorce, is compelling and that the residency requirement is necessary to afford the family court an opportunity to gather accurate information on which to base a custody decision. While I agree that solicitude for the children's interests should be a paramount State objective in divorce proceedings, this interest may not be used broadly to infringe the due process rights of persons seeking divorces. Less restrictive alternatives exist for the achievement of the State's objectives and, where fundamental rights are involved, the State is under a duty to employ these other devices. *Boddie v. Connecticut, supra* at 381-82; *Wymelenberg v. Syman, supra* at 1355; *Turner v. Fouche,* 396 U.S. 346, 364 (1970).

The appellee in this case has no children by the marriage she seeks to dissolve. Yet she is imposed upon by HRS § 580-1 because that provision applies to *all* who seek a judicial dissolution of their marriage, regardless of whether minor children are involved in the litigation. Clearly the State's declared purpose could be achieved ·by less restrictive means; HRS § 580-1 could have been narrowly defined so as to apply only to those divorces where custody of the children was in issue.[4] By failing to do so the State has unnecessarily constrained the appellee in the exercise of her due process rights and therefore the restriction must fall.

Another State interest has been advanced by the majority opinion in an attempt to salvage the residency limitation of HRS § 580-1. It is contended that the one-year waiting period ensures that the family court has constitu-

---

[4] I do not wish to imply that this narrow application would solve all the constitutional problems raised by this residence restriction. As subsequently noted, the statute would still fail to satisfy the reasonable classification requirements of the equal protection clause.

tionally valid jurisdiction. In my opinion this consideration is insufficient to override the interest of the appellee in having access to the only avenue open for dissolving her allegedly untenable marriage.

The United States Supreme Court has consistently stated that jurisdiction over the marital status is dependent on one of the spouses being domiciled within the state. *Sherrer v. Sherrer*, 334 U.S. 343, 349 (1948); *Williams v. North Carolina*, 325 U.S. 226, 229 (1945); *Bell v. Bell*, 181 U.S. 175, 177 (1901). As the majority opinion recognizes, to acquire a new domicile there need be only physical presence in the new state and an intent to make it one's home. *Yamane v. Piper*, 51 Haw. 339, 340, 461 P.2d 131, 132 (1969). The length of actual residence is immaterial so long as, at some point, physical presence coincides with an intention to establish a permanent place of abode. *Anderson v. Anderson*, 38 Haw. 261, 263 (1948); RESTATEMENT OF CONFLICT OF LAWS § 15 (1934). Thus, the residency limitation of HRS § 580-1 is not jurisdictionally compelled and cannot be used to override the constitutional rights of the appellee.

Finally, the State may not justify its denial of access to the courts on the ground that the residency requirement is a necessary device to protect the courts from fraudulent allegations of domicile. The State has failed to make any showing that the danger of perjured testimony is greater in divorce proceedings than in other proceedings in which testimony is elicited from interested parties. Even were such a showing to be made, as the Supreme Court pointed out in the *Boddie* case, *supra* at 381-82, other alternatives, such as penalties for false pleadings or affidavits, exist to achieve this goal. These devices serve the State's interests without infringing upon the constitutionally protected rights of persons seeking a dissolution of the marital relationship. The State may not impose an irrebuttable presumption against residence or domicile under circumstances in which they may in fact exist merely to achieve the "remote administrative benefit" of providing a facile measure of their

existence. See *Carrington v. Rash*, 380 U.S. 89, 96 (1965). Based on the foregoing analysis it is clear that the State has failed to advance sufficient countervailing justifications for the residency restrictions imposed by HRS § 580-1 and, therefore, I would hold that due process of law requires that the appellee be granted an opportunity to be heard on her claimed right to a dissolution of her marriage.

### II. HRS § 580-1 DENIES THE APPELEE THE EQUAL PROTECTION OF THE LAWS

The majority opinion concludes that the residency requirement imposed by HRS § 580-1 does not infringe upon the constitutionally protected right of interstate travel and thus the State need not demonstrate a compelling State interest in order to sustain the statute. I disagree. The freedom to travel from state to state is a right basic to our federal system. Durational residency requirements are inherently destructive of this right.[5] They impede interstate mobility and foster parochial attitudes antagonistic to the concept of federalism. For these reasons I concur in the view expressed by Mr. Justice Brennan in *Oregon v. Mitchell*, 400 U.S. 112, 238 (1970):

By definition, the imposition of a durational residence requirement operates to penalize those persons, and only those persons, who have exercised their constitutional right of interstate migration. . . . [I]n such a case, governmental action may withstand constitutional

---

[5]The majority claims that the fact that "divorce can wait" precludes the conclusion that HRS § 580-1 unduly burdens the fundamental right to travel interstate. If this were true, it could be argued *a fortiori* that a durational residency requirement as to voting in local elections would likewise not chill the exercise of the constitutional right to travel. Yet several three-judge federal courts have found to the contrary. Burg v. Canniffe, 315 F. Supp. 380, 385 (D. Mass. 1970); Kohn v. Davis, 320 F. Supp. 246, 251 (D. Vt. 1970). In Keppel v. Donovan, 326 F. Supp. 15, 20 (D. Minn. 1970), the court said that although "[a]dmittedly the penalty that attaches in the instant case is less severe than in Shapiro v. Thompson, where the necessities of life were denied," nonetheless "the Court's reasoning there buttresses our decision in the instant case."

scrutiny only upon a clear showing that the burden imposed is necessary to protect a compelling and substantial governmental interest.

In the instant case, the State has failed to show that the residency requirement serves a compelling state interest. Therefore the waiting-period requirement clearly violates the equal protection clause. This conclusion is not, however, dependent solely on the State's failure to satisfy the compelling state interest test. Even under the less stringent standard of a rational relation to a legitimate state purpose the residency restriction must fail.

The guarantee of the equal protection of the laws does not prohibit the State from classifying its inhabitants in order to achieve legitimate legislative ends. What it does mandate, however, is that government shall not exercise its categorization powers arbitrarily. The classification of a particular group as a subject for regulation must be reasonable in relation to the purpose of the legislation. *Rinaldi v. Yeager*, 384 U.S. 305, 309 (1966); *Hasegawa v. Maui Pineapple Co.*, 52 Haw. 327, 329, 475 P.2d 679, 681 (1970). This reasonableness requirement is violated when the State (1) imposes burdens on persons who stand in no rational relationship to the object of the regulation, or (2) penalizes only a few while others similarly situated are exempted. *Rinaldi v. Yeager, supra* at 309-10; *Hasegawa v. Maui Pineapple Co., supra* at 332-33; *see* Note, *Developments—Equal Protection*, 82 Harv. L. Rev. 1065, 1084-87 (1969). The one-year requirement in the instant case violates both of these principles.

As previously noted, the State argues that the purpose of the one-year requirement is to afford the family court an opportunity to gather information on which to base a custody decision. Given this goal then the residency classification is clearly unreasonable since it unavoidably burdens many divorce claimants who are childless. Imposing residency requirements on these people bears no relation to the purposes advanced by the State. Thus, the class distinction

imposed by HRS § 580-1 is unconstitutionally arbitrary.

The one-year requirement of HRS § 580-1 is also unreasonable because in achieving its stated purpose the legislature has failed to burden all those who are similarly situated with respect to object of the law. Custody decisions arise not only in divorce actions but also in separation and annulment proceedings. HRS § 571-46. Yet HRS § 580-1 fastens a one-year durational residency on only a single class of marital actions. The problem of gathering custody information in separation and annulment cases can be no less compelling than in divorce actions. These actions, however, require only a three-month residency. The equal protection clause does not permit the State to burden only a few when others similarly situated are exempted.

Thus, even under the traditional equal protection tests a classification of divorce applicants according to whether they have lived in the State for one year is irrational. I would hold therefore that the one-year requirement works an unconstitutionally invidious class discrimination. The decree of divorce should be affirmed.

#### DISSENTING OPINION OF CIRCUIT JUDGE LUM

I concur in the dissent, but I wish to add that I do not believe all durational residency requirements are ipso facto unconstitutional.