MON CHI HEUNG AU, aka Heidi Heung and Arlene L. Gillespie, for themselves and all others similarly situated, Plaintiffs,

v.

The Honorable Herman T. F. LUM and Wayne Y. Kanagawa, Defendants.

Civ. No. 72–3588.

United States District Court,
D. Hawaii.

June 19, 1973.

Ian L. Mattoch, Mattoch, Kemper & Brown, Honolulu, Hawaii, for plaintiffs.

Peter J. Levinson, Deputy Atty. Gen., George Pai, Atty. Gen., of Hawaii, Honolulu, Hawaii, for defendants.

Before CHOY, Circuit Judge, and PENCE and KING, District Judges.

## DECISION

SAMUEL P. KING, District Judge:

This is a class action challenging the constitutionality of that portion of Hawaii Revised Statutes § 580–1 which requires that a person be a domiciliary of a circuit for three months and of the State for a year before that person may apply for and receive a divorce.[1] Juris-

---

1. § 580–1 Jurisdiction; hearing. Exclusive original jurisdiction in matters of annulment, divorce, and separation, subject to section 603–37 as to change of venue, and subject also to appeal according to law, is conferred upon the judge or judges of the family court of the circuit in which the applicant has been domiciled or has been physically present for a continuous period of at least three months next preceding the application therefor. No absolute divorce from the bond of matrimony shall be granted for any cause unless either party to the marriage has been domiciled or has been physically present in the State for a continuous period of at least one year next preceding the application therefor.

diction is based on Title 28 U.S.C. §§ 1343, 2201, 2202 and Title 42 U.S.C. §§ 1983, 1988. Pursuant to Title 28 U.S.C. §§ 2281, 2284, a three-judge court has been impaneled and the Attorney General and Governor of Hawaii have been notified.

Plaintiffs are members of a class composed of all persons domiciled in the State of Hawaii who are ineligible for divorce in this state because of the durational residency[2] requirements of H.R.S. § 580–1.

Defendant Lum is the Chairman of the Board of Family Court Judges and presides over it. The Board functions under H.R.S. § 571–5, *inter alia,* to administer both general policies for the conduct of the Family Court and rules and forms governing procedures and practices in that court. One such procedure administered is the durational residency requirement of § 580–1. Defendant Lum is also the senior judge of the Family Court, First Circuit. Defendant Kanagawa is the Director of the Family Court, First Circuit. Pursuant to H.R.S. § 571–6 he is responsible for the formation of procedures governing the routine administration of Family Court services in the First Circuit, including the one under which plaintiffs who have not met the residency requirements of § 580–1 are denied the services and jurisdiction of the Family Court, First Circuit.

On October 10, 1972, this court issued a preliminary injunction enjoining defendants, pending our determination on the constitutionality of § 580–1, from finally dismissing any divorce suit because the litigants are members of that class of persons domiciled in the State of Hawaii who do not satisfy the durational residency requirements of the statute.

■ We now hold that the durational residency requirements of § 580–1 violate the equal protection clause of the 14th Amendment[3] insofar as they make specific durations of residency an absolute prerequisite to access to the divorce

A person who may be residing on any military or federal base, installation, or reservation within the State or who may be present in the State under military orders shall not thereby be prohibited from meeting the requirements of this section.

H.R.S. § 580–1 contains physical presence requirements of like duration and in the alternative to the domiciliary requirements. We read this as defining two distinct classes of divorce litigants. One class consists of those alleging domiciliary status for the required length of time, the other of those alleging physical presence for the required length of time but without domiciliary status for some or all of that time. The parties have stipulated that all named plaintiffs have bona fide domiciliary intent. Therefore, the constitutional validity of these provisions as applied to nondomiciliaries is not before this court.

2. In the context of Hawaii divorce jurisdiction (and as used in this opinion) the concept of "residence" is the equivalent of "domiciliary residence" Anderson v. Anderson, 38 Haw. 261 (1948). Domicile is defined as the concurrence of physical presence and the intention "to remain, either permanently or for an indefinite time, without any fixed or certain purpose to return to the former abode." *Id.* at 263. If the physical presence and domiciliary intent are concurrent the duration of actual residence is irrelevant. *Id.*

3. Plaintiffs also urge that H.R.S. § 580–1 violates due process, arguing that under Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1970), access to a divorce forum is a "fundamental interest" which cannot be limited absent a "countervailing state interest of overriding significance". We note that Wymelenberg v. Syman, 328 F.Supp. 1353 (E.D.Wisc.1971), made just such an application of *Boddie.* Nevertheless, the actual due process holding in *Boddie* equated a *total* denial to indigents of access to a divorce forum with denial of a meaningful opportunity to be heard. Determining whether a *limited* durational denial to new residents of access to a divorce forum should be invalidated under the *Boddie* rationale is a highly speculative and subjective endeavor. Because our equal protection ruling makes such a determination unnecessary we pass no judgment on plaintiffs' proposition.

courts.[4] In so ruling we distinguish between the two distinct residency (*i. e.*, domiciliary)[5] requirements § 580–1 establishes as to both state and circuit that is 1) domiciliary status and 2) durational residency. A domiciliary status requirement is not constitutionally objectional.[6] But the durational residency requirements impermissibly discriminate against newly arrived, albeit quite bona fide,[7] domiciliaries by denying them the immediate access to divorce courts granted to long-time residents.

 As a consequence of their effect on the fundamental right of interstate travel,[8] the durational residence requirements could be sustained only if found *necessary* to promote a *compelling* state interest.[9] Under this "strict equal protection" standard, a classification which in fact promotes a "compelling state interest" is nonetheless unconstitutional unless "tailored" with "precision" to achieve its objectives by other available means less burdensome to the protected activity, *e. g.*, Dunn v. Blumstein, 405 U.S. 330, 343, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972). The state's position on oral argument was that the traditional standard was appropriate because the residency requirements are "benign discriminations",[10] in that they prevent the impulsive destruction of marriages by newcomers emotionally disoriented by the long distance relocation to Hawaii. We reject that view because it necessarily rests on an erroneous, but unarticulated, premise equating the "benign" imposition of a disability on a minority "for their own good", with the granting of a compensatory minority advantage.

The remaining Hawaii interests urged as promoted by the residency requirements are fundamentally little different from those advanced by other states.[11] They are:

1) Insuring sufficient time for the Family Court to gather data on which to base custody decisions.

2) Implementing a policy of deferring to states with a superior interest in regulating the marital union.

3) Protecting the courts from fraudulent assertions of domicile.

---

4. *Accord* Wymelenberg v. Syman, *supra* n. 3, *Contra,* Whitehead v. Whitehead, 53 Haw. 302, 492 P.2d 939 (1972) ; Coleman v. Coleman, 32 Ohio St.2d 155, 291 N.E. 2d 530 (1972) ; Place v. Place, Vt., 278 A. 2d 710 (1971).

5. *See* note 2, *supra.*

6. Williams v. North Carolina, 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279 (1942), requires that full faith and credit be accorded divorce decrees if the rendering state is the domicile of one of the marriage partners.

7. One becomes a bona fide domiciliary the instant physical presence and the requisite intent concur. *See* note 2, *supra.*

8. The right to travel has been specifically held to be "fundamental" for purposes of triggering the "strict equal protection test." Dunn v. Blumstein, 405 U.S. 330, 343, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972) ; Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1968). Durational divorce residency requirements were tested against the strict standard in Wymelenberg v. Syman, *supra* n. 3, and Coleman v. Coleman, *supra*

n. 4. In Whitehead v. Whitehead, *supra* n. 4, the traditional standard was used on the rationale that the stricter standard applies only when travel is actually deterred or the penalty on the interstate movement is the deprivation of a right independently fundamental. But these two propositions were specifically rejected by the Dunn Court, which then unequivocally stated that "durational residency laws must be measured by a strict equal protection test." 405 U.S. at 338– 342.

9. Plaintiffs urge that *Boddie, supra,* as explained in United States v. Kras, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973), raises access to the divorce court to the level of a fundamental right. We pass no judgment on this proposition for reasons similar to those expressed in note 3, *supra.*

10. *See* Porcelli v. Titus, 431 F.2d 1254 (3rd Cir. 1970), cert. denied 402 U.S. 944, 91 S.Ct. 1612, 29 L.Ed.2d 112 (1971).

11. *Compare* Wymelenberg v. Syman, *supra* 328 F.Supp. at 1355 ; *Coleman*, 291 N.E. 2d at 534 n. 6.

We are not persuaded by the justifications regarding the prevention of impulsive newcomer divorces, the need for sufficient time for custody decisions, and the policy of deferring to states with superior interests; in each instance residency requirements are a patently blunderbuss approach to problems far more susceptible to "tailored", "less drastic means".

The state interest in preventing fraudulent assertions of domicile does, however, warrant closer analysis. Not only is it unquestionably a "compelling state interest",[12] but it also relates to an imperative problem which is significantly controlled by durational residency requirements. Modern mobility and the great variations among the states as to divorce grounds make the threat of divorce court perjury on domicile a particularly real one. Most divorce residency requirements have been specifically directed at that problem,[13] and they are rational and effective in that context. For they do in fact deter precisely those nondomiciliaries who most threaten the state's interest in limiting divorce jurisdiction to domiciliaries: 1) divorce forum shoppers looking for a short residency period to sit out; 2) visitors and transients who are around long enough to commence a divorce action; and 3) persons who would perjure themselves on the purely subjective matter of domiciliary intent, but who are unwilling or unable to meet the residency requirement and who will not perjure themselves on the objective, hence verifiable, matter of length of residence.

Absolute durational residence requirements on divorce are, nevertheless, constitutionally flawed in that their efficacy in isolating those nondomiciliaries most likely to assault divorce courts is accompanied by an inability to segregate bona fide domiciliaries from those so isolated. The existence of a myriad of tangible criteria highly relevant to bona fides of domicile [14] convinces us that the simple expediency of denying all recent travelers access to the divorce courts violates equal protection for the dual reasons that: 1) it is not "tailored" with "precision" to achieve its objectives by other available means less burdensome to the fundamental right to travel, e. g., Dunn, supra 405 U.S. at 343, 92 S.Ct. 995, and 2) it creates an impermissible "conclusive presumption" of nonresidency, e. g., Carrington v. Rash, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965).

Because our holding in this case is a narrow one its exact parameters should be carefully noted. We reiterate that we have invalidated the durational residency requirements of H.R.S. § 580–1 because they make specific durations of residency absolute prerequisites to access to the divorce courts. In so ruling we do not impugn the vitality of the proposition that the adoption of policies encouraging or discouraging divorce is a social, moral, religious, and political decision vested in the respective state legislatures. See Williams v. North Carolina, 317 U.S. 287, 303, 63 S.Ct. 207, 87 L.Ed. 279 (1942). We are not confronted with, and do not pass judgment on, the constitutionality of nondiscriminatory state efforts at discouraging divorce, e. g., waiting periods prior to final decree.[15] Similarly, our ruling today does not prevent state requirements that litigants offer objective, tangible evidence of domiciliary bona fides; nor

---

12. See note 6, supra.

13. This conclusion was reached by the Whitehead Court after a considered discussion of the issue. 53 Haw. at 307, 492 P.2d 939.

14. To cite only a few: Purchasing of a home or renting an apartment for a period comparable to or in excess of the duration of the residency requirements; se-

curing a permanent job; registering a car or obtaining a driver's license. See also the excellent discussion of other criteria in Comment, 30 Md.L.Rev. 367, 380 n. 13 (1970), and the sources cited therein.

15. But see People ex rel. Christiansen v. Connell, 2 Ill.2d 332, 118 N.E.2d 262 (1954).

does it prevent a state determination that a specific duration of residency is prima facie evidence of such domiciliary bona fides.

For the above mentioned reasons, we declare unconstitutional the durational domiciliary requirements of H.R.S. § 580–1. We omit injunctive relief as we can rely on the defendants in good faith to refrain from applying the invalidated barrier to divorce litigants attempting to establish their domiciliary bona fides.