## Mary Elizabeth Place b/n/f Gertrude M. Piluski v. David Wesley Place

[278 A.2d 710]

No. 135-70

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed June 1, 1971

Vermont Legal Aid, Inc., *John A. Dooley, III*, Burlington, for Plaintiff.

*James M. Jeffords*, Attorney General, and *Martin K. Miller*, Assistant Attorney General, for the State.

**Barney, J.** On its face the libel for divorce showed that the libellant had been a resident of Vermont for about three months at the time the action was brought. 15 V.S.A. § 592 required that a libellant be a resident for six months before a libel could be brought. The libellee moved to dismiss on that ground below, and the motion was granted. However, the lower court did not enter a judgment of dismissal based on its ruling, but certified the question here prior to judgment, and issued a temporary order providing for support of the libellant, and support and custody of the minor child. The question certified is:

> Whether 15 V.S.A. section 592 requiring six months residency prior to filing a divorce libel denies the Libellant due process and equal protection of the law as guaranteed by the Fourteenth Amendment of the United States Constitution.

The state, through the attorney general, as *amicus curiae,* has undertaken the response to this question. First, it contends, since her residency would now permit the libellant to file a libel in conformity with the statute, the constitutional issue has been mooted. Furthermore, the state questions the appropriateness of the constitutional issue underlying *Shapiro* v. *Thompson,* 394 U.S. 618, 22 L.Ed.2d 600, 89 S.Ct. 1322 (1969), as applied to divorce matters.

The problem of "mootness" always seems to center on its applicability to the case at hand. The Supreme Court of the United States recently wrestled with it in *Hall* v. *Beals,* 396 U.S. 45, 24 L.Ed.2d 214, 90 S.Ct. 200 (1969), resulting in a divided court. In the case before us, the problems of recapturing jurisdiction by new service of process, with possible loss of remedy, at least make "mootness" questionable, particularly in view of the fact that the libel has not yet been dismissed. There is enough reality remaining in the controversy to permit us to reach the certified question.

We are mindful of the stricture that constitutional questions ought not to be unnecessarily dealt with. *State* v. *Laplaca,* 126 Vt. 171, 176, 224 A.2d 911 (1966). It of course impinges more rigorously where the constitutional issue acts to invalidate existing law or practice than where it does not. In this case, reaching the constitutional question is therefore the more easily justified, since it is the view of the Court that existing law is not invalidated.

The case of *Shapiro* v. *Thompson, supra,* deals with preliminary waiting period or residence requirements for otherwise eligible welfare recipients newly moved to a state. Such requirements are held to be unconstitutional under the Equal Protection Clause unless they promote a compelling state interest. The particular right held to be infringed by the residency requirement is the "right of free interstate travel", a right not expressly stated in the Constitution, but determined to be an implicit part of it. *Shapiro* v. *Thompson, supra,* 394 U.S. at 630–31. The test is said to be that if a law has no other purpose than to chill the assertion of constitutional rights by penalizing those who choose to exercise them, that law is patently unconstitutional.

■ This is desperately thin guidance. A number of interstate differentials spring to mind that quite certainly chill change of residence, such as, for example, the presence of a state income tax, the measure of unemployment benefits, the extent of public supported education, to name but a few. Indeed, the Supreme Court itself footnoted a number of like issues on which it implied no view, such as eligibility to vote, or for tuition-free education, to be licensed to practice a profession, or to hunt and fish. Clearly the nature of the privilege or right being withheld during the qualifying period is of prime significance, together with the "compelling" nature of the state's interest in that right or privilege.

■■ We are here dealing with the marriage relationship. In *Pennoyer* v. *Neff,* 95 U.S. 714, 24 L.Ed. 565, 573 (1877), it is determined that a state has the absolute right to prescribe the conditions upon which the marriage relation between its own citizens shall be created, and the causes for which it may be dissolved. This view was reaffirmed in the concurring opinion of four Justices in *Armstrong* v. *Armstrong,* 350 U.S. 568, 579 (footnote 3), 100 L.Ed. 705, 714, 76 S.Ct. 629 (1956). Taking this view with the acknowledged strong public policy favoring the preservation of the marriage relationship, the "compelling" nature of the state's interest in requiring a reasonable deferral of their application to dissolve their marriage on the part of newcomers is adequately demonstrated. It is in line with this interest for the state to require a reexamination by the parties of their marital situation after a move to this state in order to determine whether such a move might not be somehow curative of the discord. It adds nothing to claim that this favored policy somehow thereby becomes an invidious classification.

*The certified question is answered in the negative and the cause is remanded.*