### In re Joseph Hendrick

[292 A.2d 245]

No. 138-71

Present: **Shangraw, C.J., Barney, Keyser and Daley, JJ. and Underwood, Supr. J.**

Opinion Filed June 6, 1972

*Stephen Rose,* Bread and Law Task Force, Vermont Legal Aid, Inc., Burlington, for Plaintiff.

*James M. Jeffords,* Attorney General, and *David E. Wilson,* Assistant Attorney General, for Defendant.

**Barney, J.** The plaintiff was declared ineligible for food stamps. At the time of application he was married, and a graduate student at Norwich University for the summer term. He came to the state in early June, 1971, intending to remain until September, 1971. In July his wife obtained employment and the family income then exceeded the level of eligibility. If the application had been granted, the cash value of the stamps which could have been issued to the family amounted to $40 for the period of eligibility involved. It is agreed that the plaintiff was, for the period June 18 to July 17, 1971, eligible for food stamps in every particular save the single one in dispute, the issue of residency.

The Board of Social Welfare found that the plaintiff did not qualify as a resident either under any applicable Vermont law or under the guidelines of the United States Department of Agriculture, the federal agency administering the program. Since the food stamp program is one which a state or smaller political subdivision may choose to participate in, at its option, presumably it does so for the purpose of benefiting those citizens who have some meaningful attachment to the unit whose resources, however small, are conjoined with those federal funds necessary to operate the program. Certainly a state such as Vermont does not enter the program intending to op-

erate it for the benefit of all the world, or even all of the United States.

This is recognized in the guidelines issued by the Department of Agriculture:

> "A resident of a State is one who is living in the State voluntarily and not for a temporary purpose: that is, with no intention of presently removing from the State. . . . intent may be evidenced by, but not limited to, such factors as maintaining address and maintaining employment status.
>
> U.S. Department of Agriculture,<br>Food and Nutrition Service<br>Instruction 732-15."

Since this is a federal program and the stated residence requirements are certainly at least as liberal as any Vermont residency requirements for any purpose, the first question for this Court is to see if the plaintiff meets Department of Agriculture standards.

Certainly he maintained a mailing address, and his wife did achieve employment status. We see these as evidence of eligible residency, but not controlling.

The significant issue is generated by the plaintiff's frankly announced and ultimately fulfilled purpose of leaving the state in September, 1971. This was not a change of mind after arrival from Ohio, but a purposeful program determined upon at the outset.

The plaintiff would have us read the phrase "with no intention of presently removing from the State" as the same as "with no present intention of removing from the State." If, by that, the plaintiff contends that the instruction contemplates that ineligibility occurs when an applicant intends to leave the State forthwith, we cannot agree. On the other hand, it is abundantly clear that the plaintiff did have a "present" intention of removing from the State in September, as he, in fact, did.

But there is really no need to rephrase the instruction. Its meaning is abundantly clear. The word "presently" has the common and well-understood meaning of "after a little while",

"before long", or "after a short time", and is so defined in Webster's Third New International Dictionary. From the context of the Department of Agriculture's quoted instruction, it is plain that this is the intended meaning. From the facts it is also plain that the plaintiff did intend to leave the State of Vermont "presently", at the time of his application. Therefore the ruling of the Board of Social Welfare is sufficiently supported on that ground alone.

Since, as the plaintiff's brief points out, the state agency is bound to comply with the instructions of the Food and Nutrition Service of the Department of Agriculture or risk the loss of the right to issue food coupons, it seems clear that the Board was duty bound to rule as it did, and the matter is thus completely disposed of. But there is some argument advanced seeking to present a constitutional issue. We do not find it present, for at least two reasons.

First, as has been pointed out, the state agency was duty bound to follow the Department of Agriculture requirements, so there can be no question of unconstitutional action initiated by the State of Vermont. The challenge, if there is one, must be addressed elsewhere.

Secondly, the issue argued does not relate to a restrictive action by a state, governing waiting time for eligibility to a welfare program, or for voting, by persons who were not "presently" intending to pass on to another state. *Shapiro* v. *Thompson*, 394 U.S. 618, 636 & n. 17 (1969); *Dunn* v. *Blumstein*, — U.S. —, 31 L.Ed.2d 274, 279 & n. 4 (1972). Whatever may be said for the doctrine of "chilling effect", the above-cited cases do not suggest its application in this situation. See *Place* v. *Place*, 129 Vt. 326, 328–29, 278 A.2d 710 (1971).

*The order of the Board of Social Welfare is affirmed. Let the result be certified.*