**Raymond J. LARSEN**

v.

**Edward P. GALLOGLY et al.**

**Civ. A. No. 5117.**

United States District Court,
D. Rhode Island.

July 16, 1973.

Harold H. Winsten, Providence, R. I.,
for plaintiff.

W. Slater Allen, Jr., Asst. Atty. Gen.,
State of Rhode Island, Providence, R. I.,
for defendants.

OPINION

Before McENTĖE, Circuit Judge,
PETTINE, Chief Judge, and DAY, District Judge.

PETTINE, Chief Judge.

This is a civil rights action authorized by 42 U.S.C.A. § 1983 in which the plaintiff seeks to have this Court declare unconstitutional and to enjoin enforcement of Title 15, Chapter 5, Section 12 of the General Laws of Rhode Island (1956, 1969 Reenactment) which establishes a two year residency requirement for divorce.[1] The palintiff further asserts a claim for compensatory damages. Jurisdiction is predicated on 28 U.S.C. § 1343(3).

Plaintiff contends that the two year residency requirement for divorce chills his constitutional right to interstate travel and violates the Fourth, Ninth and Fourteenth Amendments. Since the challenged statute is of state-wide application, this three-judge court was convened pursuant to 28 U.S.C. § 2281 and § 2284.

### Findings of Fact

The facts of this case are uncontested. On July 15, 1971 the plaintiff, Raymond J. Larsen, moved from the state of New York to Rhode Island, where he now resides. He filed a miscellaneous petition for relief without commencement of divorce with the Family Court of the State of Rhode Island. After the court granted the relief prayed for, the plaintiff moved to amend this petition to a petition for absolute divorce. This motion was denied because he did not meet the two year residency requirement.

### Discussion of Law

Plaintiff has moved for summary judgment. Fed.R.Civ.P. 56. There is no genuine issue of fact, nor does this Court lack the facts necessary for the adjudication of the legal issues. See Besaw v. Affleck, 333 F.Supp. 775, 778 (D.R.I.1971).

Plaintiff makes a two-pronged argument that the divorce residency law is unconstitutional: that this condition penalizes the constitutionally protected right of interstate travel and that it denigrates the right of due process. We conclude that this argument must prevail.

The freedom of interstate travel has long been recognized as a guarantee under our Constitution, Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1968); United States v. Guest, 383 U.S. 745, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1965); The Passenger Cases, 7 How. 283, 492, 12 L.Ed. 702 (1849) and has been characterized as a fundamental right. Shapiro v. Thompson, *supra.*

Shapiro v. Thompson, *supra,* and Dunn v. Blumstein, *supra,* have established that infringements on the guarantee of interstate travel invoke the "compelling interest" standard of review. As the court in *Dunn* explained:

"The right to travel is an 'unconditional personal right,' a right whose exercise may not be conditioned [cita-

1. R.I.G.L. 15–5–12 provides in pertinent part:
   "Domicile and residence requirements. —No petition for divorce from the bond of marriage shall be granted unless the petitioner shall have been a domiciled inhabitant of this state and have resided therein for the period of two (2) years next before the preferring of such petition; provided, that if the respondent shall have been a domiciled inhabitant of this state and shall have resided in this state for the period of two (2) years next before the preferring of such petition, and shall be actually served with process, the above requirement as to domicile and residence on the part of the petitioner shall be deemed to have been satisfied and fulfilled; provided, however, that the residence and domicile of any person immediately prior to the commencement of his active service as a member of the armed forces or of the merchant marine of the United States, or immediately prior to his absence from the state in the performance of services in connection with military operations, as hereinafter defined, shall, for the purposes of this section, continue to be his residence and domicile during the time of such service and for a period of thirty (30) days thereafter."

tions omitted]. Durational residency laws impermissibly condition and penalize the right to travel by imposing their prohibition on only those persons who have recently exercised that right. * * * *Absent a compelling state interest, a State may not burden the right to travel in this way.*" (emphasis added) *Id.* 405 U.S. 341–342, 92 S.Ct. 1003. Cf. Shapiro v. Thompson, *supra,* 394 U.S. 638 n. 21, 86 S.Ct. 1170; Cole v. Housing Authority of City of Newport, 435 F.2d 807, 811 (1st Cir. 1970).

The compelling state interest test is "triggered by 'any classification which serves to *penalize* the exercise of that right [to travel] . . . .'" *Shapiro, supra,* 394 U.S. at 634, 89 S.Ct. at 1331, cited by *Dunn, supra,* 405 U.S. at 340, 92 S.Ct. 1002; see also Cole v. Housing Authority of City of Newport, 435 F.2d 807, 810 (1st Cir. 1970).

■ A "penalty" in this context means the suffering of "disadvantage, loss or hardship due to some action." Cole v. Housing Authority of City of Newport, *supra,* 435 F.2d at 811. As a result of the residency requirement for divorce, new citizens of Rhode Island must endure a hiatus of two years before they become entitled to a judicial adjustment of a "fundamental human relationship." Boddie v. Connecticut, 401 U.S. 371, 383, 91 S.Ct. 780, 28 L. Ed.2d 113 (1971). Without doubt this statute "penaliz[es] persons because they have recently migrated to [Rhode Island]." Cole v. Housing Authority of

City of Newport, *supra,* 435 F.2d at 811. Therefore, we find that the defendants must demonstrate a compelling state interest in order for us to sustain this statute as constitutional.[2]

Relying on Boddie v. Connecticut, *supra,* the plaintiff further asserts that there has been an abridgement of his right to due process. In *Boddie,* welfare recipients challenged, as an obstacle to divorce, a Connecticut statute which required the payment of court filing fees in order to commence a civil action. The court held that the state's denial to indigents of access to the courts for divorces violated due process.

*Boddie* recognized "the basic position of the marriage relationship in this society's hierarchy of values and the concomitant state monopolization of the means for legally dissolving this relationship." *Id.* 401 U.S. at 374, 91 S.Ct. at 784.

Here, as in *Boddie,* a segment of the citizenry is being denied access to judicial dissolution of the marriage relationship. See Wymelenberg v. Syman, 328 F.Supp. 1353, 1354 (D.Wis.1971). It has been held, however, that *Boddie* does not constitute precedent for the determination of the validity of durational residency requirements which are substantive requirements for divorce and not jurisdictional prerequisites which foreclose access to a court.[3] Whitehead v. Whitehead, 492 P.2d 939, 947 (Hawaii 1972). The Rhode Island case law sheds little light as to whether this requirement is jurisdictional or substantive.[4]

2. No evidence was introduced by the plaintiff at the hearing that this statute, in fact, operates to deter people from interstate travel. The lack of such evidence does not lessen the strict scrutiny with which we are obligated to analyze this statute nor the burden on the defendants to prove that compelling state interests are advanced by the statute. In *Dunn, supra,* the Supreme Court emphatically rejected the attempt by the state of Tennessee to distinguish *Shapiro* on the ground that the "compelling state interest test is appropriate only where there is 'some evidence to indicate a deterrence or

infringement on the right to travel . . . .'"
*Id.* at 399.

3. For discussion of this distinction in a different context see Annotation, Length or duration of domicil, as distinguished from fact of domicil as a jurisdictional matter in a divorce action. 2 A.L.R.2d 291 (1948).

4. Doerner v. Doerner, 46 R.I. 41, 124 A. 728 (1924), an appeal from a denial of divorce, relates that the trial court denied the petition "on the ground of lack of jurisdiction" since petitioner did not reside in the state two years before the filing of

Whether the state completely precludes an applicant for divorce from a hearing by decreeing the durational residency requirement to be an indispensable element of the court's jurisdiction to hear the case, or whether the state provides a judicial forum for the determination of the fulfillment of the residency requirement, the result is the same. In both instances the denial of a judicial remedy is mandated.

■ We read *Boddie* as standing for the proposition that when the state does provide for judicial dissolution of the marital bonds, all citizens of the state must be given

> " 'an *opportunity* [to be heard] . . . granted at a meaningful time and in a meaningful manner,' Armstrong v. Manzo, 380 U.S. 545, 552, [85 S.Ct. 1187, 14 L.Ed.2d 62] (1965) (emphasis added), 'for [a] hearing appropriate to the nature of the case,' Mullane v. Central Hanover Bank & Trust Co., *supra* [339 U.S. 306] at

313 [70 S.Ct. 652, at 657, 94 L.Ed. 865]." *Boddie, supra,* 401 U.S. at 378, 91 S.Ct. at 786.

It appears to us to be mere semantics to assert that under either "type" of residency requirement, the petitioner has been provided with a "meaningful opportunity to be heard." *Boddie, supra,* 401 U.S. at 377, 91 S.Ct. 780.

We, therefore, find that this statute abridges due process.

Under the standard of *Boddie, supra,* at 377, 91 S.Ct. at 785, such violation of due process can only be justified by "a countervailing state interest of overriding significance."

Two standards of review are thus interjected in this case: that required by the due process analysis, and the "compelling interest" equal protection test necessitated by the violation of the right of interstate travel, discussed above. The difference between these two standards is vague.[5] To pass the constitu-

---

the divorce petition. Because of a similar failure to fulfill residency requirements, the Rhode Island Supreme Court noted in Flora v. Flora, 66 R.I. 70, 17 A. 2d 429 (1941) that the trial justice dismissed for "lack of jurisdiction over the case." These cases are not sufficient guidelines for us to determine whether the jurisdiction spoken of is the jurisdiction of the court to hear the case or its jurisdiction to grant a divorce decree.

5. The distinction between the compelling interest equal protection test and the due process analysis enunciated by Justice Harlan in *Boddie* is muddy. Although one law review comment has implied that the absence of any mention of denial of equal protection in *Boddie* manifested the court's hesitation to pursue a course in which access to courts might be designated a fundamental interest, The Supreme Court—1970 Term, 85 Harv.L.Rev. 104–111 (1971), other commentators have found the difference between the due process analysis and the compelling interest approach to be one of degree rather than kind. G. Goodpaster, The integration of equal protection, due process standards, and the indigent's right of free access to the courts, 56 Iowa L.Rev. 223, 240 (1970) ; Note: Due Process Clause—Access to Divorce Courts for Indigents, 46 Tulane L.Rev. 799, 804 (1972). Adding

to the chaos are the indications in recent opinions of the Supreme Court that the traditional equal protection test is being given a new bite, see G. Gunther, Foreword: In Search of Evolving Doctrine on a Changing Court: A Model For a Newer Equal Protection, 86 Harv.L.Rev. 1 (1972) and the recent reversion by the Supreme Court to the traditional equal protection test to sustain filing fee requirements as pertaining to indigents for bankruptcy. United States v. Kras, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973). More confusion as to the constitutional protection to be given access to the courts for divorce is created by the intimations in *Kras* that the right to divorce is a fundamental interest:

> "The denial of access to the judicial forum in *Boddie* touched directly, as has been noted, on the marital relationship and on the associational interests that surround the establishment and dissolution of that relationship. On many occasions we have recognized the fundamental importance of these interests under our Constitution." *Id.* at 444, 93 S.Ct. at 637.

> "Bankruptcy is hardly akin to free speech or marriage or to those other rights, so many of which are imbedded in the First Amendment, that the Court has come to regard as fundamental and

tional screening, however, this statute must meet the more stringent standard. Whether the "compelling interest" test is considered the lesser or higher standard, we find that this measure has not been met.

The first purpose advanced in justification of this statute is that a two year residency requirement insures the state that it has jurisdiction over, at least, one of the parties to the divorce action, and therefore the power to render a divorce decree which will be accorded full faith and credit by its sister states. See Williams v. North Carolina, 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279 (1942). The state undisputably has a legitimate interest in the protection of the validity of its divorce decrees in order to avoid the social havoc which would otherwise result. But the condition of two years residency is a separate and distinct requirement from that of domicile. R.I. G.L. 15–5–12. Admittedly, residency does provide one indicia of domicile. Arguably, the two year residency requirement is an administratively efficient and convenient yardstick of domicile. Such a rule might also serve to safeguard against perjured testimony in a divorce action, where it is in the petitioner's self-interest to testify that he or she intends to permanently reside in this state.

We find this rationale fails. The residency requirement functions as an irrebuttable presumption against domicile for the first two years. It acts as a crude net which enmeshes both domiciliaries and non-domiciliaries. As such, it violates the Equal Protection Clause of the Fourteenth Amendment, *Dunn, supra,* 405 U.S. 350–352, 92 S.Ct. 995; Carrington v. Rash, 380 U.S. 89, 96, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965).

Furthermore, administrative convenience cannot serve as justification for the abridgement of constitutional guarantees where less restrictive means are available. Shapiro v. Thompson, *supra,* 394 U.S. 637–638, 89 S.Ct. 1322; Dunn v. Blumstein, *supra,* 405 U.S. 349–354, 92 S.Ct. 995. An inquiry as to the domicile of the parties might easily be incorporated into the divorce hearing itself. False testimony under oath might be discouraged by sanctions against perjury pursuant to R.I.G.L. 11–33–1, 11–33–2 (1956, 1969 Reenactment), or a statute might be enacted punishing the abuse of process. A shorter period of residency might also pass constitutional specifications. See Shapiro v. Thompson, *supra,* 394 U.S. 638 n. 21, 89 S.Ct. 1322; Cole v. Housing Authority of City of Newport, *supra,* 435 F.2d 811.[6]

that demand the lofty requirement of a compelling government interest before they may be significantly regulated." *Id.* at 446, 93 S.Ct. at 638.

The dissent by Justice Marshall did not fail to note the significance of the dicta of the majority,

"I am intrigued by the majority's suggestion that, because the granting of a divorce impinges on 'associational interests,' the right to a divorce is constitutionally protected. Are we to require that state divorce laws serve compelling state interests? For example, if a State chooses to allow divorces only when one party is shown to have committed adultery, must its refusal to allow them when the parties claim irreconcilable differences be justified by some compelling state interest? I raise these questions only to suggest that the majority's focus on the relative importance

in the constitutional scheme of divorce and bankruptcy is misplaced. What is involved is the importance of access to the courts, either to remove an obligation which other branches of the government stand ready to enforce, as Mr. Justice Stewart sees it, or to determine claims of rights, as I see it."

6. As an illustration, we note that the latest draft of the Uniform Divorce Act written by the National Conference of Commissioners on Uniform State Laws provides for the entry of a divorce decree if:
"the court finds that one of the parties has been a resident of this State, or is a member of the armed services who has been stationed in this State, for 90 days next preceding the commencement of the proceeding or the entry of the decree. . . ." Cited in Whitehead v. Whitehead, *supra,* 492 P.2d at 947.

The second state interest presented by defendants is that this statute promotes marital stability. The thrust of "this logic would also require a similar waiting period for long-term residents of this state." *Shapiro, supra,* 394 U.S. at 637, 89 S.Ct. at 1333, cited by Wymelenberg v. Syman, *supra,* 328 F.Supp. 1355. A more sophisticated variation of this argument is that this provision encourages persons, after a move into this state, to reexamine their marital relationship in the hope that the move itself might be curative of the marital problems. See Place v. Place, 278 A.2d 710, 712 (1971); Coleman v. Coleman, 291 N.E.2d 530 (1972). Such a state purpose fails to rise even to the standard of rationality. Marital problems might develop after the move to the state, within the two year period. Moreover, such a requirement would also embrace those individuals who have separated from their spouses prior to their move into the state.

The third rationale for this statute offered by the defendants is that "state institutions supported by the taxpayers of a given state should [not] be overburdened by use by persons from other states." The short answer to this contention is that the prerequisite of domicile for divorce, above discussed, precludes access to the state machinery for divorce by non-residents.

Another possible concern represented by the residency requirement is that the state might become a "divorce mill." To us, such a term not only implies a "jurisdiction which grants divorces to visitors as opposed to permanent residents or domiciliaries," Wymelenberg v. Syman, *supra,* 328 F.Supp. 1356, but a jurisdiction in which grounds for divorce are relatively easy to prove. The requirement of domicile allays any fears of granting divorces to transients. And we

note that the grounds for the dissolution of marriage in Rhode Island are not of the nature to induce non-residents to seek divorces here.

Finally, it might be argued that the two year residency requirement prevents surreptitiously obtained divorces without notice to out-of-state spouses. See Monroe v. Monroe, 32 Ohio Misc. 129, 289 N.E.2d 915, 919 (Court of Common Pleas of Ohio, 1972); Place v. Place, *supra,* 278 A.2d 902. Suffice it to state that more narrowly drawn provisions already protect against such a circumstance by the requirement of notice to the respondent spouse. R.I.G.L. 15–5–14; R.I.G.L. 15–5–15 (1956, 1969 Reenactment).

■ We hold that the defendants have proven no state interest of "overriding significance" or of a compelling quality. On its face, R.I.G.L. 15–5–12 is unconstitutional.

■ Plaintiff further claims compensatory damages from defendant, Judge Alprin. Because of the doctrine of judicial immunity, this claim must fall. Where a judge acts in his judicial role pursuant to his jurisdiction, he is isolated from suit. Pierson v. Ray, 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). A judge becomes liable to suits for damages only when he acts in the complete absence of jurisdiction. Schwartz v. Weinstein, 333 F.Supp. 1031 (E.D.Mo.1971), aff'd, 459 F.2d 882 (8th Cir. 1972). This well established legal principle has not been changed by the passage of 42 U.S.C. § 1983. Pierson v. Ray, *supra,* 386 U.S. at 554, 87 S.Ct. 1213.

■ The doctrine of judicial immunity does not, however, prevent the grant of injunctive relief against a judge in a proper case. Cassidy v. Ceci, 320 F. Supp. 223, 228 (E.D.Wis.1970) (3-judge

See also the following cases which have sustained shorter durational residency requirements for divorce: Shiffman v. Askew, 359 F.Supp. 1225 (D.C.Fla.1973) (six months); Coleman v. Coleman, 32 Ohio St.2d 155, 291 N.E.2d 530 (1972)

(one year); Porter v. Porter, 296 A.2d 900 (N.H.1972) (one year); Whitehead v. Whitehead, 492 P.2d 939 (Hawaii 1972) (one year); and Place v. Place, 129 Vt. 326, 278 A.2d 710 (1971) (six months).

court); Conover v. Montemuro, 304 F. Supp. 259 (E.D.Pa.1969); Boddie v. Connecticut, 286 F.Supp. 968 (D.Conn. 1968) (3-judge court) rev'd on other grounds 401 U.S. 371 (1971); Rousselle v. Perez, 293 F.Supp. 298 (E.D.La. 1968); see also Hodgson v. Hamilton Municipal Court, 349 F.Supp. 1125 (S. D.Ohio 1972); United States v. Clark, 249 F.Supp. 720 (S.D.Ala.1965) (3-judge court). A preventive remedy does not shackle a judge in the performance of his duties by fear of personal consequences. Rousselle v. Perez, *supra*, 293 F.Supp. 298. Rather the practical thrust of an injunction is similar to that of mandamus. Conover v. Montemuro, *supra*.

The motion for summary judgment is therefore granted. This Court hereby declares that Title 15, Chapter 5, Section 12 of the Rhode Island General Laws (1956, 1969 Reenactment) is unconstitutional on its face and permanently enjoins the defendants from the enforcement of such statute. The plaintiff's claim for compensatory damages is denied.

An order shall be prepared by the plaintiff reflecting the ruling of this Court.