Carol Maureen SOSNA, on behalf of herself and all others similarly situated, Plaintiff,

v.

The STATE OF IOWA, and A. L. Keck, Individually and as Judge of the District Court of the State of Iowa in and for Jackson County, Defendants.

No. 73–C–1002–ED.

United States District Court,
N. D. Iowa, E. D.

July 16, 1973.

H. Edwin Simmers, Paul E. Kempter, Dubuque, Iowa, for plaintiff.

Richard C. Turner, Atty. Gen., George W. Murray Special Asst. Atty. Gen., Des Moines, Iowa, for defendants.

Before STEPHENSON, Circuit Judge, McMANUS and HANSON, Chief District Judges.

STEPHENSON, Circuit Judge.

Plaintiff, Carol Maureen Sosna, is presently a resident of Green Island, Jackson County, Iowa. She has resided there since August 1972, prior to which she resided in the State of New York. She was married to respondent, Michael

Sosna, on September 5, 1964 in the State of Michigan.

In September 1972, plaintiff instituted marriage dissolution proceedings against respondent, a non-resident, in the District Court of Iowa, Jackson County, pursuant to Iowa Code Chapter 598. Iowa Code § 598.6 (1971),[1] requires a one year Iowa residency by a petitioner when the respondent is a non-resident. By order dated December 27, 1972, the Honorable A. L. Keck, a co-defendant herein, in ruling on a special appearance of respondent, dismissed the petition pursuant to Iowa Code § 598.9 (1971)[2] for want of jurisdiction.

Plaintiff now brings this class action pursuant to Fed.R.Civ.P. 23, and seeks to have §§ 598.6 and 598.9 (1971) declared unconstitutional as violative of her right to petition for redress of grievances under the First Amendment,[3] the Fourteenth Amendment,[4] and in violation of her right to travel freely from one state to another insofar as it imposes a one year durational residency requirement. She also prays for an injunction against its further applications. A three-judge district court was convened to consider the merits of this cause. See, 28 U.S.C. § 2281.[5]

"[D]urational residence laws must be measured by a strict equal protection test: they are unconstitutional unless the State can demonstrate that such laws are *'necessary* to promote a *compelling* governmental interest.'" Dunn v. Blumstein, 405 U.S. 330, 342, 92 S.Ct. 995, 1003, 31 L.Ed.2d 274 (1972); Shapiro v. Thompson, 394 U.S. 618, 634, 89 S.Ct. 1322, 1331, 22 L.Ed.2d 600 (1969).

We are not dealing here with the right to vote nor the privilege to receive welfare as involved in *Dunn, supra* and *Shapiro, supra*. In *Dunn*, the Court held that a durational residency requirement imposed under Tennessee law which precluded newcomers from voting was not necessary to further a compelling state interest. With emphasis placed upon the difference between *bona fide* residence requirements and *durational* residence requirements, the Court noted that new residents as a group may be less informed relative to state and local issues than older residents, and that durational residency requirements will exclude some uninformed new residents. It concluded, however, that ". . . as devices to limit the franchise to knowledgeable residents, the conclusive presumptions of durational residence requirements are much too crude. . . . They represent a requirement of knowledge unfairly imposed on only some citizens." The basic constitutional right to vote, therefore, could not be an-

---

1. Iowa Code § 598.6 (1971) reads as follows:

   "Except where the respondent is a resident of this state and is served by personal service, the petition for dissolution of marriage, *in addition to* setting forth the information required by section 598.5, must state that the petitioner has been for the last year a resident of the state, specifying the county in which the petitioner has resided, and the length of such residence therein after deducting all absences from the state; and that the maintenance of the residence has been in good faith and not for the purpose of obtaining a marriage dissolution only."

2. Iowa Code § 598.9 (1971) reads as follows:

   "If the averments as to residence are not fully proved, the hearing shall proceed no further, and the action be dismissed by the court."

3. U.S.Const. Amend. I.

4. Id., Amend. XIV.

5. We note at the outset that termination of plaintiff's deferral period, in August of 1973, would not render this case moot since the cause before us is a class action and the court is confronted with the reasonable likelihood that the problem will occur to members of the class of which plaintiff is currently a member. *See,* Hall v. Beals, 396 U.S. 45, 48–49, 90 S.Ct. 200, 202, 24 L.Ed.2d 214 (1969); and *compare with,* Bailey v. Patterson, 369 U.S. 31, 32–33, 82 S.Ct. 549, 550, 7 L.Ed.2d 512 (1962); *see also,* Roe v. Wade, 410 U.S. 113, 124–125, 93 S.Ct. 705, 712–713, 35 L.Ed.2d 147 (1973).

nulled where the "relationship between the state interest in an informed electorate" and the one year residency requirement demonstrated "simply too attenuated a relationship." Dunn v. Blumstein, *supra*, 405 U.S. 330, 359–360, 92 S.Ct. 995, 1012 (1972).

In *Shapiro*, the Court noted that the record reflected "weighty evidence" that the main thrust of the durational residency requirement in issue was to exclude from that jurisdiction the poor who needed or would probably need relief. Shapiro v. Thompson, *supra*, 394 U.S. 618, 628, 89 S.Ct. 1322, 1328, 22 L. Ed.2d 600 (1969). In declaring the welfare residency requirement unconstitutional, the Court reasoned that implicit in any attempt to restrain potential welfare recipients from entering a state, when the motivating factor of the indigents is to seek higher benefits, is the notion that this class of indigents is "less deserving than indigents who do not take this consideration into account." *Id.* 394 U.S. 618, 631–632, 89 S.Ct. 1322, 1330. The net effect of the requirement was the creation of two classes of indigents—the sole distinction being a residency requirement which denied the newcomers the very means to obtain their subsistence. *Id.*, 394 U.S. 618, 627, 89 S.Ct. 1322, 1327.

Furthermore, the Court expressly stated in *Shapiro* that it did not purport to outlaw summarily all duration residency requirements.

> "We imply no view of the validity of waiting-period *or* residence requirements determining eligibility to vote, eligibility for tuition-free education, to obtain a license to practice a profession, to hunt or fish, and so forth. Such requirements may promote compelling state interests on the one hand, or, on the other, may not be penalties upon the exercise of the constitutional right of interstate travel."

394 U.S. 618, 638 n. 21, 89 S.Ct. 1322, 1333 n. 21.

■ Unlike voting or welfare, the concept of divorce is not a constitutional right, nor is it a basic necessity to survival. *See*, Whitehead v. Whitehead, 492 P.2d 939, 945 (Hawaii 1972); *accord*, Coleman v. Coleman, 32 Ohio St.2d 155, 291 N.E.2d 530, 533 (1972). Divorce is wholly a creature of statute, with the absolute power to prescribe the conditions relative thereto being vested in the state.[6] *See*, Pennoyer v. Neff, 95 U.S. 714, 734–735, 24 L.Ed. 565 (1877).

It is significant to note in this connection that the Iowa Dissolution of Marriage Act is based upon a "no-fault" concept of divorce. *See*, 20 Drake L. Rev. 211 (1971). While this innovative reform promotes a more harmonious dissolution of a marital breakdown, *cf.*, In re Marriage of Williams, 199 N.W.2d 339, 342 (Iowa 1972), it was not the intent of the legislature to create in Iowa a virtual sanctuary for transient divorces based upon sham domiciles. To the contrary, Iowa law favors the preservation of marriage whenever possible, as evidenced by the ninety-day conciliation period of the new Iowa act. The period is mandatory unless waived by the court upon a showing of good cause.[7] Moreover, the deferral period may well foster a re-examination of marriage so that a couple might determine whether the move itself has helped restore tranquility to their estranged relationship. Place v. Place, 129 Vt. 326, 278 A.2d 710, 711–712 (1971); *accord*, Coleman v. Coleman, *supra*, 32 Ohio St.2d 155, 291 N.E.2d 530, 535 (1972). It also serves to discourage Iowa from unnecessarily interfering with a marital relationship between non-residents in which it has no interest.

■ Based upon the foregoing, with particular consideration being given to

6. *See*, Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971), in which the Supreme Court held that due process prohibits any state from denying

indigents access to its divorce courts solely because of inability to pay court costs.

7. Iowa Code § 598.16 (1971).

the power of a state to regulate its own laws governing marriage and its dissolution, Pennoyer v. Neff, *supra*, 95 U.S. 714, 734–735, 24 L.Ed. 565 (1877); *accord,* Boddie v. Connecticut, *supra*, 401 U.S. 371, 376, 91 S.Ct. 780, 785, 28 L. Ed.2d 113 (1971), we are convinced that Iowa's interest in establishing a one-year deferral period [8] is sufficiently compelling to render §§ 598.6 and 598.9 of the 1971 Iowa Code constitutionally permissible.[9]

McMANUS, Chief Judge (dissenting):

I am compelled to dissent. In my view the majority's analysis of the constitutional issues involved is deficient. They incorrectly restrict the right to travel rationale, improperly apply the strict equal protection test and ignore the due process/access to the courts argument.

Citing Dunn v. Blumstein and Shapiro v. Thompson, *supra,* the majority concedes that durational residence requirements must be "measured by a strict equal protection test." From that point, however, the thrust of the opinion seems to be an attempt to distinguish the residence laws at issue in *Dunn* and *Shapiro* from that at issue here. Great emphasis is placed upon the fact that *Dunn* involved the right to vote and *Shapiro* the right to welfare benefits, while this case involves only divorce, "not a constitutional right, nor . . . a basic necessity to survival." The purpose of this distinction is unclear, but it appears to

be a justification for utilizing some unidentified test, less stringent than strict equal protection. Although the majority does offer several purportedly "compelling" justifications for the discriminatory classifications inherent in section 598.6 of the Iowa Code, the record is devoid of evidence to support these justifications, since the state produced absolutely no evidence. See *Dunn, supra,* 405 U.S. at 346, 92 S.Ct. 995, 31 L.Ed.2d 274. Also the majority never expressly recognizes the necessity for considering less onerous alternatives when applying the "strict equal protection test." Accordingly, I deem it necessary to set forth what I consider to be the appropriate constitutional analysis mandated by the relevant case law.

It can no longer be disputed that the right to unhindered interstate travel and settlement, in and of itself, is a fundamental right guaranteed by the constitution of the United States. Dunn v. Blumstein, *supra,* at 338, 92 S.Ct. 995 (1972); Oregon v. Mitchell, 400 U.S. 112, 237, 91 S.Ct. 260, 27 L.Ed.2d 272 (separate opinion of Brennan, White and Marshall, JJ.), 285–286 (Stewart, J., concurring and dissenting, with whom Burger, C. J., and Blackmun, J., joined) (1970). Shapiro v. Thompson, *supra,* 394 U.S. at 629–631, 89 S.Ct. 1322, 22 L. Ed.2d 600 (1969); United States v. Guest, 383 U.S. 745, 758, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966). It is also clear that section 598.6 of the Iowa Code is a durational residence requirement which penalizes only petitioners who have re-

---

8. *See,* Whitehead v. Whitehead, *supra,* 492 P.2d 939, 948 (Hawaii 1972), insofar as it states that there is no material difference between the respective periods of residence prescribed by durational residency requirements whether the period be one year or ninety days. "If a prescribed period of one year discriminates against recent residents, so does a prescribed period of ninety days."

9. In *Shapiro, supra,* 394 U.S. 618, 631, 89 S.Ct. 1322, 1329, 22 L.Ed.2d 600 (1969), the Court stated that "[i]f a law has 'no other purpose * * * than to chill the assertion of constitu-

tional rights by penalizing those who chose to exercise them, then it [is] patently unconstitutional.'" United States v. Jackson, 390 U.S. 570, 581, 88 S.Ct. 1209, 1216, 20 L.Ed.2d 138 (1968).

The Vermont court in Place v. Place, *supra,* 129 Vt. 326, 278 A.2d 710, 711 (1971), noted in response to the foregoing passage: "This is desperately thin guidance. A number of interstate differentials spring to mind that quite certainly chill change of residence, such as, for example, the presence of a state income tax, the measure of unemployment benefits, the extent of public supported education, to name but a few."

cently exercised the right to interstate migration. The majority's attempt to distinguish *Dunn* and *Shapiro* seems unfounded in view of the explicit language in *Dunn* wherein the court stated that "whether we look to the benefit withheld by the classification (the opportunity to vote) or the basis for the classification (recent interstate travel) we conclude that the State must show a substantial and compelling reason for imposing durational residence requirements." *Id,* 405 U.S. at 335, 92 S.Ct. at 999.

The standard, therefore, that must be applied in determining the constitutionality of sections 598.6 and 598.9 of the Iowa Code (1971) is the strict equal protection test. Under this test the burden is on the state to demonstrate that (1) the classification serves a compelling state interest, and (2) that no less restrictive alternatives are available to the state. As the court stated in *Dunn,* "It is not sufficient for the State to show that durational residence requirements further a very substantial state interest. In pursuing that important interest, the State cannot choose means that unnecessarily burden or restrict constitutionally protected activity." *Id,* at 343, 92 S.Ct. at 1003; see Oregon v.

Mitchell, *supra,* 400 U.S. at 237, 239, 91 S.Ct. 260; Shapiro v. Thompson, *supra,* 394 U.S. at 634–638, 89 S.Ct. 1322; N.A.A.C.P. v. Button, 371 U.S. 415, 438, 83 S.Ct. 328, 9 L.Ed.2d 405 (1962); Wymelenberg v. Syman, 328 F.Supp. 1353 (E.D.Wisc.1971). *See also* Whitehead v. Whitehead, 492 P.2d 939, 948 (Hawaii 1972)(Levinson, J., dissenting).

As the first "compelling" justification for section 598.6, the majority has found that it serves to prevent Iowa from becoming "a virtual sanctuary for transient divorces based upon sham domiciles."[1] This finding completely avoids the basic issue. Admittedly, Iowa has a legitimate interest in not becoming a "divorce mill." The critical question, however, is whether this interest is served by denying bona fide residents of the state the right to seek a dissolution.[2] In creating an irrebuttable presumption against recently arrived residents, the Iowa law sweeps too broadly since there are less restrictive alternatives available to the state. In my opinion, the Iowa judiciary is perfectly competent to determine whether the residence of a petitioner has been maintained in good faith and not for the purpose of obtaining a dissolution.[3]

1. The limited classification which § 598.6 creates also appears violative of the Equal Protection Clause due to its arbitrary imposition of a one-year residency requirement where the petitioner is a resident and the respondent is not, without imposing the same requirement in similar situations such as where the respondent resides in Iowa and the petitioner does not. *See* United States Dep't. of Agriculture v. Moreno, —— U.S. ——, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973). The arbitrariness of the scheme is illustrated by the ease with which divorces can be obtained under the present statute through the use of sham residences. For example, "if both parties desire the divorce and are willing to co-operate, it is possible to avoid the establishment of 'residence' in Iowa. . . . All that the parties need do is falsify their petition for divorce to the effect that the defendant is a resident of the state—a statement which the Iowa courts apparently are unwilling to scrutinize." Note, Some Problems Under Iowa's Judicial Jurisdiction Statutes,

48 Iowa L.Rev. 968, 982 (1963). Additionally, without needing to falsify the petition, the respondent could actually move into Iowa and the petitioner could immediately file for divorce even though not a resident. Thus, in addition to being violative of the Equal Protection Clause due to its arbitrariness, § 598.6 also appears to make Iowa subject to becoming a "divorce mill" even with its one-year residency requirement in the limited situation before the court.

2. It is clear from the evidence that the plaintiff is a bona fide resident of the state and not here merely for the purpose of obtaining a marriage dissolution.

3. Adequate protection would be afforded by limiting access to dissolution to those who are permanent or bona fide residents or domiciliaries of the state, meaning those physically present in the state with intent to make it their home. The burden to establish such would be on the petitioner. *See Dunn, supra,* at 343–354, 92 S.Ct. 995. "[S]uch objective indicia of bona

Neither the specter of perjury nor the argument for administrative convenience is supportive of the majority's position or sufficient to justify the durational residence requirement in question. See Vlandis v. Kline, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (June 1973); Dunn, *supra*, 405 U.S. at 345–354, 92 S.Ct. 995; Boddie v. Connecticut, 401 U.S. 371, 381–382, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); Shapiro, *supra*, 394 U.S. at 633, 89 S.Ct. 1322; Carrington v. Rash, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965). As stated in Dunn, *supra*, 405 U.S. at 351–352, 92 S.Ct. at 1007–1008,

> "The State's legitimate purpose is to determine whether certain persons in the community are bona fide residents. A durational residence requirement creates a classification that may, in a crude way, exclude nonresidents from that group. But it also excludes many residents. Given the State's legitimate purpose and the individual interests that are affected, the classification is all too imprecise. . . . In general, it is not very difficult for Tennessee to determine on an individualized basis whether one recently arrived in the community is in fact a resident, although of course there will always be difficult cases.

. . . But since Tennessee's presumption from failure to meet the durational residence requirements is conclusive, a showing of actual bona fide residence is irrelevant, even though such a showing would fully serve the State's purposes embodied in the presumption and would achieve those purposes with far less drastic impact on constitutionally protected interests."[4]

With regard to the other reasons advanced by the majority in support of § 598.6, I am convinced that they do not serve any compelling state interest. Initially, the majority states that the one-year "deferral period may well foster a re-examination of marriage so that a couple might determine whether the move itself has helped restore tranquility to their estranged relationship." This reasoning, however, completely ignores the fact that § 598.6 requires a one-year residency of a petitioner only in the limited situation where the respondent does not reside in Iowa.[5] It is difficult to conceive how "a couple might determine whether the move itself has helped restore tranquility to their estranged relationship" when in fact they are living in different states. The majority's argument would be more plausible had the state seen fit to impose a one-year deferral period where both

---

fide residence as a dwelling, car registration, or driver's license," among other things, provide an adequate basis for a judicial determination of bona fide residence. *Dunn, supra*, at 352, 92 S.Ct. at 1008.

4. Although it has not been urged by the plaintiff, it appears that the "irrebuttable presumption" created by section 598.6 is also subject to attack on due process grounds in view of Vlandis v. Kline, *supra*. *See also* Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); Heiner v. Donnan, 285 U.S. 312, 52 S.Ct. 358, 76 L.Ed. 772 (1932). Speaking for the majority, Justice Stewart found that a "permanent irrebutable presumption of nonresidence . . . is violative of the Due Process Clause, because it provides no opportunity for students . . . to

demonstrate that they have become bona fide . . . residents. The State can establish such reasonable criteria for instate status as to make virtually certain that students who are not, in fact, bona fide residents of the State, but who have come there solely for educational purposes, cannot take advantage of the in-state rates."

Although the "irrebuttable presumption" in this case is not permanent but only for one year, the state's denial of any opportunity to demonstrate bona fide residence appears violative of the due process clause in view of the other alternatives available to the state. *See Dunn, supra*, 405 U.S. at 352, 92 S.Ct. 995.

5. § 598.6 requires a one-year residency of a petitioner "[e]xcept where respondent is a resident of this state and is served by personal service, . . . ."

the petitioner and the respondent are residents of the state.

The final state interest advanced by the majority is that the one-year deferral period "serves to discourage Iowa from unnecessarily interfering with a marital relationship between non-residents in which it has no interest." This argument, however, ignores the fact that in the case of a bona fide resident, the state does have an interest in the marriage relationship regardless of whether the petitioner has been in Iowa for one year. Additionally, the argument ignores the fact that Iowa imposes no one-year deferral period in the situation where the respondent has recently moved to Iowa and the petitioner still lives in another state. The unnecessary interference in that situation, if any, would appear to be no different than in the present case.

Finally, the majority has ignored the due process/access to the courts concept enunciated in Boddie v. Connecticut, *supra*. Contrary to the majority's contention that "divorce is wholly a creature of statute, with the absolute power to prescribe the conditions relative thereto being vested in the state", and recognizing that marriage is a fundamental human relationship involving interests of basic importance in our society, the court in *Boddie* held that a state may not, consistent with the obligations imposed by the Due Process Clause, deny one class of citizens access to the procedures for adjusting that relationship, absent a showing by the State of a sufficient countervailing justification for that denial. Boddie, *supra*, 401 U.S. at 380, 91 S.Ct. 780; Wymelenberg v. Syman, *supra*; Whitehead v. Whitehead, *supra*. As with the filing fee requirement in *Boddie*, the durational residence requirement of § 598.6 denies one class of citizens access to the only procedure available for obtaining a dissolution. As a result, the state must show a sufficient countervailing justification for its restriction on plaintiff's right to access to the courts to dissolve her marriage, which it totally failed to do.

For the above reasons I am of the view that the state has shown no sufficient countervailing justification to support its one-year residence requirement in light of the alternatives available.