ROSALIE DAVIS v. ALBERT DAVIS.
WARREN SPANNAUS, ATTORNEY GENERAL,
INTERVENOR.

210 N. W. 2d 221.

August 24, 1973—No. 43832.

*Marino, Becker & Granquist, Bernard P. Becker,* and *Luther A. Granquist,* for appellant.

*Warren Spannaus,* Attorney General, *Curtis D. Forslund,* So-

▆▆▆▆▆▆▆▆▆▆▆▆

licitor General, and *Byron E. Starns,* Special Assistant Attorney General, for respondent intervenor.

▆▆▆▆▆▆▆▆▆▆▆▆

MacLAUGHLIN, JUSTICE.

The sole issue for our consideration in this case is the constitutionality of Minnesota's 1-year durational-residency requirement in a divorce action. The trial court found the requirement to be constitutional and so do we.

In May 1971, plaintiff, Rosalie Davis, separated from her husband, defendant Albert Davis. At that time plaintiff resided in Missouri. On June 19, 1971, she moved from Missouri to Minnesota with five minor children and established domicile in Minneapolis. Her husband did not accompany her to Minnesota. The summons and complaint in the divorce action were served on defendant in Missouri on August 30, 1971, and the Minnesota attorney general was notified that plaintiff was challenging the constitutionality of the 1-year durational-residency requirement contained in § 518.07. The complaint was filed with the district court on October 19, 1971, and a default hearing was held on January 21, 1972. On May 22, 1972, the trial court dismissed plaintiff's action because she had not met the 1-year durational-residency requirement.[1]

---

[1] While neither party has raised the question of mootness, it appears that plaintiff now meets the 1-year durational-residency requirement. However, we do not feel that this renders this constitutional issue moot. In Roe v. Wade, 410 U. S. 113, 93 S. Ct. 705, 35 L. ed. 2d 147 (1973), which involved the constitutionality of certain criminal abortion laws, the court, in discussing mootness, said: "But when, as here, pregnancy is a significant fact in the litigation, the normal 266-day human gestation period is so short that the pregnancy will come to term before the usual appellate process is complete. If that termination makes a case moot, pregnancy litigation seldom will survive much beyond the trial stage, and appellate review will be effectively denied. Our law should not be that rigid. * * *

"We therefore agree with the District Court that Jane Roe had standing to undertake this litigation, that she presented a justiciable con-

■ Minn. St. 518.07 provides:

"No divorce shall be granted unless the plaintiff has resided in this state one year immediately preceding the filing of the complaint, except for adultery committed while the plaintiff was a resident of this state."

Plaintiff does not contest the state's power to restrict access to divorce courts to bona fide residents of the state. Nor does the state dispute that plaintiff was a bona fide resident when she filed for the divorce. The question is whether it is constitutional to require a plaintiff, in addition to *being* a resident, to *have been* a resident for 1 year.

Plaintiff contends that the enforcement of the 1-year durational-residency requirement penalizes her for the exercise of her right to travel and denies her equal protection of the law under the Fourteenth Amendment.

Freedom to travel throughout the United States has long been recognized as a basic right under the Constitution, and the freedom to travel includes the freedom to enter and abide in any state. Dunn v. Blumstein, 405 U. S. 330, 92 S. Ct. 995, 31 L. ed. 2d 274 (1972).

Equal protection of the laws is guaranteed by the Fourteenth Amendment. In testing whether state legislation violates equal protection, two tests have evolved.[2] Where a statutory classification is either based on "suspect criteria" (e.g., race) or unduly affects or interferes with "fundamental rights" (e.g., voting),

---

troversy, and that the termination of her 1970 pregnancy has not rendered her case moot." 410 U. S. 125, 93 S. Ct. 713, 35 L. ed. 2d 161.

We believe the same reasoning applies to the facts of this case. Therefore, for the purpose of deciding the issue in this case, the fact that plaintiff now meets the 1-year durational-residency requirement does not render the case moot.

[2] There is some indication that the Supreme Court may be moving away from complete reliance on these two equal protection tests. See, Vlandis v. Kline, 412 U. S. 441, 93 S. Ct. 2230, 37 L. ed. 2d 63 (1973) (White, J. concurring).

equal protection is denied unless the classification is necessary to a compelling state interest. See, e.g., McLaughlin v. Florida, 379 U. S. 184, 85 S. Ct. 283, 13 L. ed. 2d 222 (1964) ; Dunn v. Blumstein, *supra*. If neither suspect criteria nor undue interference with a fundamental right is involved, the so-called "traditional" standard is used. Under the traditional standard, equal protection is denied only if the statute's classification is not "rationally related" to a legitimate governmental objective. McGowan v. Maryland, 366 U. S. 420, 81 S. Ct. 1101, 6 L. ed. 2d 393 (1961) ; Dandridge v. Williams, 397 U. S. 471, 90 S. Ct. 1153, 25 L. ed. 2d 491.

Plaintiff argues that Shapiro v. Thompson, 394 U. S. 618, 89 S. Ct. 1322, 22 L. ed. 2d 600 (1969), and Dunn v. Blumstein, *supra*, support her claim of unconstitutionality. In Shapiro, the court considered whether certain statutes of Connecticut, Pennsylvania, and the District of Columbia, which granted welfare benefits to persons who had resided in the jurisdiction for 1 year or more but denied such benefits to persons who had not resided therein for at least 1 year, were in violation of the equal protection clause. The court held that fundamental rights were involved and that because the 1-year waiting period for welfare benefits penalized the constitutional right to travel, "its constitutionality must be judged by the stricter standard of whether it promotes a *compelling* state interest" rather than the traditional standard that equal protection is denied only if the classification is without any reasonable basis. 394 U. S. 638, 89 S. Ct. 1333, 22 L. ed. 2d 617. Since the court found that a 1-year durational-residency requirement for welfare benefits was not necessary to any compelling state interest, the statutes were held unconstitutional.

In Dunn, the court struck down the 1-year durational-residency requirement for voter registration in the State of Tennessee as violative of the equal protection clause. Again, applying the compelling-state-interest test, the court held that the durational-residency requirement unconstitutionally penalized bona

fide residents who had recently moved to Tennessee from other jurisdictions by denying them the fundamental right to vote until they had lived in Tennessee for at least 1 year.

In Shapiro and Dunn, the court concluded that certain classifications which impose penalties on the constitutional right to travel, unless shown to be necessary to promote a compelling state interest, are unconstitutional and that the denial of welfare and the denial of the right to vote unconstitutionally penalized recent travel. The instant case also involves the right of interstate travel. Therefore, if Minnesota's durational-residency requirement for divorce penalizes recent travel, in the same sense that denying welfare benefits and denying the right to vote do, the 1-year requirement must be found necessary to a compelling state interest if it is to be found constitutional. If it does not so penalize interstate travel, we need only find that the durational-residency requirement is rationally related to a legitimate governmental objective.

Plaintiff argues that, under the Shapiro and Dunn decisions, all durational-residency laws must be measured by the strict equal protection test. That argument is not without merit. The court stated in Dunn (405 U. S. 340, 92 S. Ct. 1002, 31 L. ed. 2d 283) that "the compelling-state-interest test would be triggered by 'any classification which serves to *penalize* the exercise of that right [to travel] * * *.' " From this language, it could be concluded that any adverse effect resulting from interstate travel, no matter how insignificant, would constitute a penalty on travel and would therefore trigger the strict test.

We cannot believe, however, that this result was intended by the Supreme Court. Surely, the severity of the penalty is relevant in determining the constitutionality of the state's imposition of a durational-residency requirement. The court's recent decision in Vlandis v. Kline, 412 U. S. 441, 93 S. Ct. 2230, 37 L. ed. 2d 63 (1973), supports this conclusion. Like many other states, Connecticut requires nonresidents of the state who are enrolled in the state university system to pay tuition and

other fees at higher rates than residents of the state. The court held that Connecticut's statutory irrebuttable presumption of nonresidence based on residence status at the time of application was violative of the due process clause because it provided no opportunity for students who had been nonresidents at the time of their application to demonstrate that they later became bona fide Connecticut residents. It is important to the case before us, however, that the court states that its decision should not "be construed to deny a State the right to impose on a student, as one element in demonstrating bona fide residence, a reasonable durational residency requirement" (412 U. S. 452, 93 S. Ct. 2236, 37 L. ed. 2d 72) and again approved Starns v. Malkerson, 326 F. Supp. 234 (D. Minn. 1970), affirmed, 401 U. S. 985, 91 S. Ct. 1231, 28 L. ed. 2d 527 (1971). The Starns case upheld the constitutionality of a Minnesota regulation that no student could qualify as a resident for university tuition purposes unless he had been a bona fide domiciliary of Minnesota for at least 1 year immediately prior thereto. Since a durational-residency requirement for resident tuition can be said to constitute a penalty on interstate travel, and since it is difficult to find any compelling state interest in requiring a 1-year wait for resident tuition, it seems clear that the court is implying that not every penalty on interstate travel triggers the compelling-state-interest test. In other words, it appears that we may weigh the harshness of the penalty in determining whether there has been a denial of equal protection.

To decide whether a law violates the equal protection clause, we are to consider three factors: (1) The character of the classification in question; (2) the individual interests affected by the classification; and (3) the governmental interests asserted in support of the classification. Dunn v. Blumstein, *supra*. Although the character of classification in this case is identical to that in Shapiro and Dunn, i.e., recent interstate travel, it seems clear that the individual interests affected by the statutory classification in this case are quite different from those in

Shapiro and Dunn. Shapiro, wherein the denial of welfare benefits was the issue, involved the individual's subsistence and survival. Dunn involved voting, "a fundamental political right, * * * preservative of all rights." Reynolds v. Sims, 377 U. S. 533, 562, 84 S. Ct. 1362, 1381, 12 L. ed. 2d 506, 527 (1964).

In this case, the interest affected by the classification based upon recent travel is clearly much less urgent than subsistence or voting in a particular election. The instant classification affects only the filing for a divorce within 1 year after migration to Minnesota. The ultimate right to file for divorce is not affected. No economic prejudice results since an action for support and maintenance in Minnesota does not have to satisfy the 1-year durational-residency requirement. Donigan v. Donigan, 236 Minn. 516, 53 N. W. 2d 635 (1952).

Three states have ruled on the same durational-residency issue which we must decide in this case. The decisions are Place v. Place, 129 Vt. 326, 278 A. 2d 710 (1971); Whitehead v. Whitehead, 53 Hawaii 302, 492 P. 2d 939 (1972), and Coleman v. Coleman, 32 Ohio St. 2d 155, 291 N. E. 2d 530 (1972). All three decisions have upheld the constitutionality of the durational-residency requirement.[3]

[3] The United States District Court in Hawaii, subsequent to the decision in Whitehead v. Whitehead, 53 Hawaii 302, 492 P. 2d 939 (1972), held that Hawaii's 1-year durational-residency requirement violated the equal protection clause of the Fourteenth Amendment. Mon Chi Heung Au v. Lum, 360 F. Supp. 219 (D. Hawaii, 1973). We agree with the reasoning of the Supreme Court of Hawaii upholding its constitutionality.

The United States District Court in Florida has recently upheld the constitutionality of Florida's 6-month residency requirement. Shiffman v. Askew, 359 F. Supp. 1225 (M. D. Fla. 1973). See, also, Sosna v. Iowa, 360 F. Supp. 1182 (N. D. Iowa, 1973); Larsen v. Gallogly, 361 F. Supp. 305 (D. R. I. 1973).

In Wymelenberg v. Syman, 328 F. Supp. 1353 (E. D. Wis. 1971), a three-judge Federal District Court in Wisconsin declared Wisconsin's 2-year durational-residency requirement for divorce to be unconstitutional. While we disagree with the conclusion reached in that opinion, it should be noted that, unlike Minnesota, at the time of the decision

194

In Whitehead v. Whitehead, *supra,* which upheld Hawaii's 1-year durational-residency requirement, the court, in discussing whether the classification unduly penalized the right to travel, noted that (53 Hawaii 311, 492 P. 2d 945) "the relief delayed by the requirement does not have the urgency which is present in the case of indigents' need for necessities of life. Divorce can wait."

Coleman v. Coleman, *supra,* also held that the durational-residency requirement does not unduly penalize the right to interstate travel and observed that divorce is "not a basic need" and is not surrounded "by any urgent need." 32 Ohio St. 2d 158, 291 N. E. 2d 533.

Although Minnesota's durational-residency requirement for divorce treats differently those who have recently migrated to Minnesota, it clearly does not penalize recent migrants in the same sense as denying subsistence assistance or denying the right to vote. The very meaning of "subsistence" implies its urgency. Similarly, if the right to vote in a particular election is denied, that right is lost forever. On the other hand, as the Whitehead and Coleman decisions point out, divorce is not nearly so urgent.

We hold that the extent to which plaintiff is penalized by the Minnesota durational-residency requirement, if indeed it can accurately be characterized as a penalty, is insufficient to require the strict, compelling-interest test. Therefore, the statute does not deny equal protection if it is rationally related to a legitimate governmental objective.

In deciding whether a statute violates the equal protection clause, we must consider the third factor set forth in Dunn v. Blumstein, *supra,* that is, the governmental interest asserted in support of the classification. To uphold the constitutionality of the 1-year residency requirement we must find a rational rela-

---

the durational-residency requirement in Wisconsin was 2 years and a divorce decree did not become final in that state for an additional year after it was granted.

tionship between it and a legitimate governmental objective or interest. Since divorce jurisdiction depends on domicile, ensuring domicile of a divorce plaintiff is clearly a legitimate governmental goal. The Supreme Court of Hawaii in Whitehead held that a 1-year residency requirement is rationally related to that goal. That court further noted that divorce is a matter within the control of the states, subject to applicable Federal constitutional limitations. However, the state must have jurisdiction over the matter, and jurisdiction is acquired when the plaintiff is domiciled in the state. In discussing domicile, the court stated (53 Hawaii 308, 492 P. 2d 943):

"A person establishes his domicile in a state by being physically present there with the intention of remaining indefinitely. For that purpose, no particular length of stay is necessary. Even a day will suffice. [Citation omitted.]

"Thus, it may be argued that a requirement of an extended period of residence is improper as a means of assuring the existence of domicile.

"However, we think that the states are justified in requiring an objective test of the establishment of domicile, such as is provided in residential requirement for divorce, because of the possibility of perjury if the finding on that issue is made dependent upon the testimony of an interested party."

Many years ago, this court advanced justification for the residency requirement. In Bechtel v. Bechtel, 101 Minn. 511, 514, 112 N. W. 883, 884 (1907), we said:

"* * * The purpose of statutes authorizing divorces, either absolute or limited, in restricting the right of action to residents of the state, is to prevent nonresidents from coming into our courts with their grievances, and to compel them to resort for relief from matrimonial entanglements to the courts of the place of their abode."

We believe that the 1-year durational-residency requirement is a reasonable means to ensure that divorce plaintiffs are resi-

dents of this state and that it lessens the possibility of our courts being utilized by nonresidents in divorce proceedings. Therefore, we hold that Minn. St. 518.07 does not violate the equal protection clause because the 1-year durational-residency requirement is rationally related to the state's legitimate goal of ensuring the domicile of divorce applicants.

2. Plaintiff also contends that the durational-residency requirement violates the due process clause of the Fourteenth Amendment, relying on Boddie v. Connecticut, 401 U. S. 371, 91 S. Ct. 780, 28 L. ed. 2d 113 (1971). That case held that to deny indigents seeking divorces access to courts because of inability to pay court costs violated due process. The court reasoned that requiring fees of an indigent denied him the opportunity to be heard on his divorce claim and, in the absence of a sufficient countervailing justification, was unconstitutional.[4]

We believe that Boddie is clearly distinguishable since the indigents were permanently (or at least as long as they were indigent) barred from attaining access to the divorce court. Here, plaintiff is not denied access to the courts since access is only temporarily delayed.

Again, as in the discussion of equal protection, plaintiff's interest in obtaining a divorce within 1 year after migration to Minnesota must be weighed against the state's interest in ensuring the domicile of divorce plaintiffs.

We have concluded that plaintiff is not denied due process by the 1-year durational-residency requirement.

Affirmed.

MR. JUSTICE YETKA and MR. JUSTICE SCOTT, not having been

---

[4] In United States v. Kras, 409 U. S. 434, 93 S. Ct. 631, 34 L. ed. 2d 626 (1973), the Supreme Court held that indigents may constitutionally be required to pay bankruptcy fees and that the Boddie case was inapplicable since bankruptcy, unlike divorce, was not the only method available to the debtor for the adjustment of his legal relationship with his creditors.

members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.